THE PEOPLE v. HENRY LYNG.

[See 10 Sup. Ct. Rep. 725.]

*Criminal law—Intoxicating liquors—Importation—Tax—Interstate commerce.*

In this case respondent was convicted of a violation of Act No. 313, Laws of 1887, for selling, in the original package, beer manufactured in another state and shipped into this State, and stored for the purpose of such sale, he not having paid the tax imposed by said act upon wholesale dealers, which conviction was affirmed, and on appeal to the United States Supreme Court the judgment was reversed, on the ground that the act in question, as applied to the facts of the case, was a regulation of interstate commerce.[1]

Exceptions from Iron. (Grant, J.) Argued January 29, 1889. Decided April 19, 1889.

Respondent was convicted of engaging in the business of selling liquors without having paid the tax required

---

[1] The following is a copy of the *body* of the opinion of Mr. Chief Justice Fuller:

" We have repeatedly held that no state has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress. *Leloup v. Mobile*, 127 U. S. 640, 648 (8 Sup. Ct. Rep. 1380), and cases cited.

" In *Bowman v. Railway Co.*, 125 U. S. 465 (8 Sup. Ct. Rep. 689, 1062), it was decided that a section of the code of the state of Iowa forbidding common carriers to bring intoxicating liquors into the state from any other state or territory, without first being furnished with a certificate as prescribed, was essentially a regulation of commerce among the states, and, not being sanctioned by the authority, express or implied, of Congress, was invalid, because repugnant to the Constitution of the United States; and in *Leisy v. Hardin,*

by law.    Conviction affirmed, and .court directed to pro-
ceed to judgment.    The facts are stated in the opinion.

*Phillips & Thompson,* for respondent.

*S. V. R. Trowbridge,* Attorney General, and *C. T. Crandall,* Prosecuting Attorney, for the people.

[The points of counsel are fully stated in the opinion,
which discusses the authorities cited.—REPORTER.]

LONG, J.    Respondent was prosecuted and convicted
under an information which alleges substantially that on
July 19, 1888, at the village of Iron River, in the county
of Iron, in this State, the respondent was a person whose
business consisted in part of selling at wholesale brewed
and malt liquors (not proprietary patent medicine), as
agent for Franz Hagemeister and Henry Hagemeister,
copartners, doing business in the city of Green Bay, Wis.,

---

10 Sup. Ct. Rep. 681, the judgment in which has just been announced,
that the right of importation of ardent spirits, distilled liquors, ale,
and beer from one state into another includes, by necessary impli-
cation, the right of sale in the original packages at the place where
the importation terminates, and that the power cannot be conceded
to a .state to exclude, directly or indirectly, the subjects of inter-
state commerce, or, by the imposition of burdens thereon, to regu-
late such commerce, without congressional permission.

"The same rule that applies to the sugar of Louisiana, the cot-
ton of South Carolina, the wines of California, the hops of Wash-
ington, the tobacco of Maryland and Connecticut, or the products,
natural or manufactured, of any state, applies to all commodities
in which a right of traffic exists, recognized by the laws of Con-
gress, the decisions of courts, and the usages of the commercial
world. It devolves on Congress to indicate such exceptions as, in
its judgment, a wise discretion may demand under particular cir-
cumstances. Lyng was merely the representative of the importers,
and his conviction cannot be sustained, in view of the conclusions.
at which we have arrived.

"The judgment of the Supreme Court of the State of Michigan
is reversed, and the cause remanded for further proceedings not.
inconsistent with this opinion."

under the firm name of Hagemeister & Son, without he or they having paid in full or in part the tax required by law to be paid upon the business, neither he nor they being druggists, selling liquors for chemical, medicinal, or sacramental purposes only, and in strict compliance with law. Respondent brings the case to this Court by writ of error, on exceptions before sentence.

The conceded facts are that Franz and Henry Hagemeister are citizens of the United States of America, and reside at the city of Green Bay, in the state of Wisconsin, and are engaged in the manufacture of lager-beer, under the name of Hagemeister & Son, at Green Bay aforesaid, where they have a brewery for the manufacture thereof; that such lager-beer is brewed liquor, within the meaning of Act No. 313, Laws of 1887; that said Hagemeister & Son own a warehouse in the village of Iron River, in the township of Iron River, in the county of Iron, and State of Michigan, where they store quantities of their lager-beer so made by them at Green Bay aforesaid, and from there shipped to their said warehouse in said village of Iron River, to be there stored and disposed of; that the defendant, Henry Lyng, is employed by said Hagemeister & Son as their agent, on a regular salary, to look after their said warehouse, to take orders for and deliver said beer so manufactured and stored in quantities exceeding three gallons, and to collect and remit the proceeds of the sales thereof to Hagemeister & Son, and was so employed on July 19, 1888.

That on July 19, 1888, at the village of Iron River, in the county of Iron, and State of Michigan, said defendant, in the course of said employment by Hagemeister & Son, did deliver from said warehouse to Martin Lally and to divers other persons, all of whom paid him therefor, certain of said lager-beer so made and shipped by Hagemeister & Son from Green Bay aforesaid, in quantities

exceeding three gallons; that all of said lager-beer was so delivered in the original packages in which it had been shipped; that the defendant sold no other liquors; that neither the said defendant nor the said Hagemeister & Son, or either of them, have paid any tax in the village of Iron River aforesaid on the business of selling or keeping for sale malt liquors at wholesale, or at wholesale and retail, nor given any bond such as is mentioned in Act No. 313, Laws of 1887.

Upon this state of facts the counsel for respondent asked the court to instruct the jury to find a verdict of not guilty. This the trial court refused, but directed them to return a verdict of guilty.

Act No. 313, under which this action is brought, is entitled—

"An act to provide for the taxation and regulation of the business of manufacturing, selling, keeping for sale, furnishing, giving, or delivering spirituous and intoxicating liquors and malt, brewed, or fermented liquors, and vinous liquors, in this State."

Section 1 of the act provides that persons engaged in the different branches of the business shall pay annually a certain specified tax. A retailer of spirituous and intoxicating liquors or mixed liquors is to pay the sum of $500. A person engaged in the business of selling, or offering for sale, spirituous and intoxicating liquors at wholesale and retail is to pay the sum of $800. A wholesaler of brewed or malt liquors only is to pay the sum of $300, and upon the business of manufacturing brewed or malt liquors for sale, the sum of $65.

"No person paying a tax on spirituous or intoxicating liquors under this act shall be liable to pay any tax on the sale of malt, brewed, or fermented liquors. No person paying a manufacturer's tax on brewed or malt liquors under this act shall be liable to pay a wholesale dealer's tax on the same."

This section also provides that a person shall pay this tax in as many different places as he carries on business. Section 2 provides that wholesale dealers shall be held and deemed to mean and include all persons who sell, or offer for sale, such liquors and beverages in quantities of more than three gallons, or more than one dozen quart bottles, at any one time, to any person or persons. Section 7 of the act provides for the punishment of any person engaged in any business requiring the payment of a tax under section 1 without paying such tax, and gives the circuit court jurisdiction in such cases. Section 24 of the act extends the criminal provisions of this statute to clerks, agents, etc.

It is the contention of defendant's counsel that, if the defendant is criminally liable at all, it can only be because his principals, Hagemeister & Son, are liable to the payment of a wholesale dealer's tax, by section 1 of the act; that Hagemeister & Son are not liable for the payment of this tax, because they are not wholesale dealers, but are importers; that articles imported retain their distinctive character at least as long as they remain in the original, unbroken packages in which they are introduced, and in the hands of the importer; that while the distinction between an importer and a wholesale dealer is not in terms drawn in this statute, it may be presumed that it was enacted in the light of Article 1, § 8, of the Constitution of the United States, granting to Congress the power to regulate commerce with foreign nations, and among the several states, etc.; that intoxicating liquors are universally recognized as articles of commerce, and a state law, imposing a tax which, in effect, discriminates between the products or manufactures of a state where it is enacted and those not of that state, is a regulation of commerce between the states, and as such is void, because repugnant to the Constitution of the United States;

that, if this statute is to be construed as imposing a wholesale dealer's tax upon one who is an importer, it is a discrimination between beer manufactured in this State and that not so manufactured, for the importer or manufacturer of beer outside this State must pay the annual tax of $300 in every township, city, and village in this State where he desires to sell, while a manufacturer of beer within this State only pays one tax of $65 per annum, and may sell his product anywhere in the State at wholesale.

No such discrimination exists between citizens of this and another state under this statute, as claimed by counsel for defendant, or between the products of this and other states. The statute treats all persons without discrimination, whether residents or non-residents, and is in perfect accord with the provisions of the Constitution of the United States. It is not a question of the right of the defendant to manufacture in this State. It is a question of the right of the State to impose upon him a tax for selling at wholesale. If the beer was manufactured in this State, and paid a manufacturer's tax, then sales at wholesale could be made without the payment of any further tax; but if a citizen of Michigan, or any other state, sees fit to manufacture his product outside of the State, and brings the same into the State as a manufactured product, and sells or keeps for sale at wholesale, within the meaning of this statute, the tax is demandable, and, if the business is carried on in violation of the law, the penalty is to be imposed which the statute prescribed. It can make no difference that it is sold in the original packages. When one sells beer, or keeps it for sale, in quantities beyond three gallons or one dozen quart bottles, to any person, at any time, he is a wholesale dealer within the meaning of the statute, wherever such beer is manufactured, within or without the State, whether sold in

original packages or broken packages. If manufactured within the State, whether by a resident or non-resident, a corporation or an individual, it pays a manufacturer's tax, and sales can be made at wholesale without payment of further tax. If the product does not pay a manufacturer's tax, whether manufactured by a resident or non-resident of the State, and sales are made at wholesale, or it is kept for sale at wholesale, within the meaning of the statute, then a wholesaler's tax must be paid.

This case, in principle, does not fall within the cases cited by counsel for defendant. It has been the policy of this State, since the repeal of the prohibitory statutes in 1875, to tax the traffic in intoxicating liquors, and it is held that this system of taxation is not a license. Mr. Justice COOLEY, in *Youngblood v. Sexton,* 32 Mich. 419, said:

"Does, then, a tax upon the traffic in liquors come within the condemnation of this provision of the Constitution, as being equivalent to a license of the traffic? Is it the same in legal effect, or is it the same according to the popular understanding of the term 'license?' * * * The popular understanding of the word 'license' undoubtedly is a permission to do something which without the license would not be allowable. * * * Within this definition, a mere tax upon the traffic cannot be a license of the traffic, unless the tax confers some right to carry on the traffic which otherwise would not have existed. We do not understand that such is the case here. The very act which imposed this tax repealed the previous law, which forbade the traffic, and declared it illegal. The trade then became lawful, whether taxed or not. * * * There is consequently nothing in the case that appears to be in the nature of a license."

The Legislature has from time to time increased this tax, and has thrown around this traffic greater safeguards and restrictions, prohibiting sales to certain specified classes of persons, as minors, intoxicated persons, etc., and also prohibiting sales on certain days of the week

and at certain hours of the day. These various acts of the Legislature have been upheld by the courts as within the police power of the State, which the Legislature might lawfully exercise within its discretion, so far as it kept within constitutional bounds. The liquor traffic has come to be regarded by the courts and legislatures as a business which must be kept under the most strict police regulation of the state. States have a right to prohibit the sale and consumption of an article of commerce which they believe to be pernicious in its effects, and the cause of disease, pauperism, and crime. In this State, however, since the act of 1875, the sale of such intoxicating and malt liquors has been regarded as lawful, but subject to such restrictions as the Legislature might from time to time impose.

That the Legislature has the power to make such regulations is not now a question of doubt, and the Legislature is the sole judge of the propriety of such enactments. Mr. Justice Harlan, in *Mugler v. Kansas,* 123 U. S. 623 (8 Sup. Ct. Rep. 273), speaking of *License Cases,* 5 How. 504, says that—

"The question [in those cases] was whether certain statutes of Massachusetts, Rhode Island, and New Hampshire, relating to the sale of spirituous liquors, were repugnant to the Constitution of the United States. In determining that question it became necessary to inquire whether there was any conflict between the exercise by Congress of its power to regulate commerce with foreign countries, or among the several states, and the exercise by a state of what are called 'police powers.' Although the members of the Court did not fully agree as to the grounds upon which the decision should be placed, they were unanimous in holding that the statutes then under examination were *not inconsistent* with the Constitution of the United States, or with any act of Congress. Chief Justice Taney said:

"'If any state deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness,

vice, or debauchery, I see nothing in the Constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper.'

"Mr. Justice McLean, among other things, said:

"'A state regulates its domestic commerce, contracts, the transmission of estates, real and personal, and acts upon internal matters which relate to its moral and political welfare. Over these subjects the federal government has no power. * * * The acknowledged police power of a state extends often to the destruction of property.' * * * * * * * *

"Mr. Justice Woodbury observed:

"'How can they [the states] be sovereign within their respective spheres, without power to regulate all their internal commerce, as well as police, and direct how, when, and where it shall be conducted, in articles intimately connected either with public morals, or public safety, or the public prosperity?'

"Mr. Justice Grier, in still more emphatic language, said:

"'The true question presented by these cases, and one which I am not disposed to evade, is whether the states have a right to prohibit the sale and consumption of an article of commerce which they believe to be pernicious in its effects, and the cause of disease, pauperism, and crime. * * * Without attempting to define what are the peculiar subjects or limits of this power, it may safely be affirmed that every law for the restraint or punishment of crime, for the preservation of the public peace, health, and morals, must come within this category. * * * It is not necessary for the sake of justifying the state legislation now under consideration to array the appalling statistics of misery, pauperism, and crime which have their origin in the use or abuse of ardent spirits. The police power, which is exclusively in the states, is alone competent to the correction of these great evils, and all measures of restraint or prohibition necessary to effect the purpose are within the scope of that authority.'"

These statutes under consideration in the above cases were enacted for the purpose of mitigating, and to some extent suppressing, the evils of intemperance. The statute of Massachusetts prohibited the traffic in intoxicating liquors by all persons except those holding a license from the county commissioners, and licensed venders were for-

bidden to sell in quantities less than 28 gallons in any single sale. Under its provisions no person was entitled, as a matter of right, to receive a license, but the question whether any license should be granted in the county was left entirely to the discretion of the commissioners. A person who did not hold a license engaged in the business of selling foreign liquors, imported into the United States under the statutes thereof. He was indicted and convicted in the state courts of a violation of the statute of the state. The other cases were under similar statutes of the states of New Hampshire and Rhode Island, and involve similar states of fact. The causes being removed to the Supreme Court, the judgments were affirmed. The claim made in those cases was that, the liquors being transported into the state under the authority of the Federal Constitution and statutes, it was not competent for the state to prohibit their sale, or regulate the manner in which it should be conducted; but the Court held that the statutes were not in conflict with the commercial provisions of the Federal Constitution. As was said by Reed, C. J., in *Collins v. Hills*, 77 Iowa, 186 (41 N. W. Rep. 571):

"When the power of the state to legislate with reference to the subject-matter is conceded, it follows necessarily, we think, that all property within the state is subject to the regulations it has enacted."

When property purchased in another state is transported to this, and then delivered to the purchaser, to be used or consumed within the State, the transaction, in so far as it is governed by the provisions for the regulation of commerce among the states, is at an end; or, in the language of Mr. Justice Woodbury, in the License Cases above cited:

"These license laws do not profess to be, nor do they operate as, regulations of foreign commerce, nor the

domestic commerce between the states. * * * It does not operate on either, or the imports of either, till they have entered the state, and become component parts of its property. Then it has, by the Constitution, the exclusive power to regulate its own internal commerce and business in such articles, and bind all residents—citizens or not—by its regulations, if they ask its protection and privileges; and Congress, instead of being opposed and thwarted by regulations as to this, can no more interfere in it than the states can interfere in regulation of foreign commerce. If the proposition was maintainable that, without any legislation by Congress as to the trade between the states, anything imported from another state, foreign or domestic, could be sold of right in the package in which it was imported, not subject to any license or internal regulation of a state, then it is obvious that the whole license system may be evaded and nullified, either from abroad or from a neighboring state, and the more especially can it be done from the latter, as imports may be made in bottles of any size, down to half a pint of spirits or wines; and, if its sale cannot be interfered with and regulated, the retail business can be carried on in any small quantity, and by the most irresponsible and unsuitable persons, with perfect impunity."

Certainly, if the State may grant or refuse licenses for the sale of this article when imported into the State at its pleasure, then may a state regulate the same by taxation. When stored in this State it is conceded to be for the purpose of sale at wholesale. It then becomes a component part of the property of the State, and, in so far as it may have been governed by the provisions of the Federal Constitution for the regulation of commerce between the states, such rights are at an end, and it must be treated as property within the State for all purposes of taxation, and it at once becomes subject to the laws which the State has enacted governing its use or disposition, whether sales are made or to be made in the original packages or not. If the principle for which counsel for defendant contend could be maintained, it would follow that manufacturers outside of the State

could bring this article within the State, and escape all taxation, either as a manufacturer or wholesale dealer, so long as the article was sold in the original packages.

It is claimed that Hagemeister & Son are not chargeable with the manufacturer's tax, because not manufacturing within the State, and that the defendant cannot be convicted, for the reason that Hagemeister & Son are not liable to the payment of a wholesale dealer's tax under this act, for they are importers, and not wholesale dealers. It does not matter where these articles are manufactured, or by whom. The person who sells, or offers them for sale, in quantities of more than three gallons, or more than one dozen quart bottles, at any one time, to any person or persons, is held to be a wholesale dealer, and liable for such wholesale dealer's tax, unless a manufacturer's tax has been paid. The defendant is not a manufacturer. The statute places all men not manufacturing, but selling, liquors in this State, in certain quantities, on the same basis, and makes them wholesale dealers.

Counsel for defendant cite *Bowman v. Railway Co.*, 125 U. S. 465 (8 Sup. Ct. Rep. 689, 1062). In that case the sole question involved was as to the validity of certain provisions of the statute which forbade common carriers from transporting to any point within the state of Iowa intoxicating liquors, unless they had been furnished with written evidence of the right of the consigner to sell the same within the state. The right to tax this commodity, when once within the state, was not in controversy in that case. *Walling v. Michigan*, 116 U. S. 446 (6 Sup. Ct. Rep. 454), was a case which arose under the Michigan statute of 1875, which required persons selling liquors, or taking orders therefor, in this State, to be shipped from without the State, to pay a tax of $100, while no such tax was required of persons selling liquors

or taking orders for the sale of the same which were the product of this State. This was held to be. a discrimination between the product of this and the other states, the Court saying:

"So long as Congress does not pass any law to regulate commerce among the several states, it thereby indicates its will that such commerce shall be free and untrammeled, and that any regulation of the subject by the states, except in matters of local concern only, is repugnant to such freedom."

But no such question is involved here. The property in question is within the jurisdiction of the State, is offered for sale, and has paid no tax. The State claims the right to regulate it by taxation, and this it may lawfully do under the police power. It is a tax local in its nature, and imposed for the purpose of restraint of the sale of a dangerous commodity. Upon the conceded facts in the case the conviction was warranted, and the verdict must stand.

The court below will proceed to judgment upon the verdict.

SHERWOOD, C. J., and CAMPBELL, J., concurred with LONG, J.

CHAMPLIN, J. I concur in the result.

MORSE, J., concurred with CHAMPLIN, J.