PEOPLE v. NEAL.

143  271
f153 ²613
153 ²616

1. FISH—ILLEGAL FISHING—PROSECUTION—CONVICTION.
   Where, in a prosecution for taking and attempting to take fish with nets, contrary to section 5865, 2 Comp. Laws, the respondent admits on the witness stand that he was fishing with nets on "about" the date alleged, the attempt, which is equally an offense with taking fish, is made out.

2. CRIMINAL LAW—DIRECTION OF VERDICT.
   Where, in a criminal case, all the essential facts are admitted, a verdict of guilty is properly directed.

3. FISH—ILLEGAL FISHING—WATERS PROHIBITED.
   Section 5865, 2 Comp. Laws, prohibiting fishing with nets in any of the waters of this State except the Great Lakes and the bays and harbors connected with said lakes, Saginaw Bay, etc., does not permit net fishing in the bays and harbors connected with Saginaw Bay, etc., but only in those bays and harbors connected with the Great Lakes.

4. SAME—INFORMATION—ISSUES.
   An averment in an information for unlawful fishing contrary to section 5865, 2 Comp. Laws, that respondent was fishing in a certain named river, does not require proof that the water named was in fact a river, or require proof of anything in that respect other than that the water was not within the excepted class.

Exceptions before judgment from Tuscola; Beach, J. Submitted November 16, 1905. (Docket No. 237.) Decided March 5, 1906.

John Neal was convicted of violating the fish law. Affirmed.

*Pulver & Smith*, for appellant.

*Walter S. Wixson*, Prosecuting Attorney, for the people.

BLAIR, J. Respondent was convicted in justice's court upon a complaint and warrant charging that:

" On the 20th day of October, 1904, at the township of Wisner, in the county aforesaid, one John Neal did unlawfully then and there, with a certain pound net, take and catch and attempt to take and catch a large number of fish in the waters of the Quanicassee river; the said pound net not being then and there a dip net used in and for catching mullett, red sides and suckers or any or either of them, and the said Quanicassee river not being then and there Lake Huron, Lake Superior, Lake Erie, Saginaw Bay, Sault Ste. Marie, St. Clair, Saginaw and Detroit rivers or any or either of said rivers, lakes or bays, nor being then and there a bay or harbor connected with said Lake Michigan, Lake Superior, Lake Huron, Lake Erie, Saginaw Bay, Sault Ste. Marie, St. Clair river, Saginaw river and Detroit river or with any or either of said rivers, lakes or bays, contrary to the form of the statute," etc.

From this conviction respondent appealed to the circuit court, where a verdict of guilty was directed by the court, and he has brought the case to this court for review upon exceptions before sentence.

The errors relied upon for a reversal are:

*First.* That the court directed the jury to find a verdict of guilty without leaving their seats.

*Second.* That the court did not submit to the jury, as a question of fact, whether the respondent was guilty of the offense specified in the complaint and warrant and identified by the people's witnesses.

*Third.* That the so-called Quanicassee river is not a river under the complaint and the proofs, but is either a harbor or bay connected with Saginaw Bay.

*Fourth.* That the Quanicassee river so-called is an integral part of Saginaw Bay.

We shall consider the second point first.

The offense complained of comprises two distinct branches: (1) To " take or catch " fish with nets; (2) "to attempt to take or catch " them. Section 5865, 2 Comp. Laws. It was not essential that the prosecution should prove the commission of both branches of the offense alleged upon the precise day charged, but, having directed their entire proofs to occurrences on certain days, it was necessary to prove sufficient facts to justify a conviction

of one branch of the statutory offense on the chosen day. The complaint was made by one of the State deputy game wardens, who testified upon the trial that he went to Quanicassee upon October 18th, but did not see respondent on that day.

"I found the nets that respondent is charged with having illegally used opposite Mr. Neal's fishhouse. There were two pound nets and a submarine. I saw Mr. Neal lifting those nets on the morning of the 19th; on the morning of the 20th, we went down and seized them. * * * I stayed at the hotel all night and went out there again the morning of the 19th about 5 o'clock. I saw Mr. Neal about 6 o'clock in a scow. There was another man with him, who I afterwards learned was his son. I saw him taking up some nets while I was on the bridge about half a mile from them. I knew Mr. Neal when he went under the bridge, and their boat was about two-thirds full of fish. I went to Bay City and got the deputy fish warden there and returned about 7 o'clock the next morning. We seized all the nets we found in the water of this river and put them on board our tug. This was on the 20th, and we stayed overnight. * * * They were placed on the tug, and he came and said his nets were there, and he wanted them."

The Bay City deputy, referred to, testified that:

"Mr. Neal came to the boat and said he wanted his nets, and said if he had been there we would not have lifted the nets."

This is, in substance, all of the testimony given by the prosecution as to the actual commission of the offense. Respondent testified in his own behalf, as follows:

"I saw Hoyt, Trudell, and Summerfield the morning of the 20th of October.

"*Q.* Did you tell him at that time that those were your nets?

"*A.* I don't think I did.

"*Q.* Did they have your net there that morning?

"*A.* They had my son's net.

"*Q.* Did they have any nets belonging to you?

"*A.* No, sir; I had been fishing at Quanicassee since I
143 MICH.—18.

bought my place there. I haven't fished there steady. The land would be of no value for anything except fishing. I bought it on purpose to catch what fish I could there."

Cross-examination:

" Q. You were using these nets on about the 20th?
" A. I was helping my son, yes.
" Q. Fishing with them?
" A. Yes."

Roy Neal, a son of respondent, testified that he owned the nets seized, and that neither he nor his father lifted any nets on the 20th, but lifted their fish box at that time and took out fish which had been caught previously. Respondent, being recalled, testified:

" I heard the testimony of Mr. Hoyt about my lifting nets on the 20th. I did not lift any nets on the 20th. I did not put any nets out there on the 20th. I did not handle any nets in any way on the 20th. I assisted my son in taking out some fish confined in a box. We have a box made of about six-inch boards. There is an inch space left between each board all along the sides and across the ends and the cover on the top and the bottom, same space on the bottom, to give the fish fresh water. We keep the fish in there until we get enough of them to take to Bay City. The box is about 6 feet wide, 16 feet long, and 4 feet high. I did not take any fish or lift any nets on the 19th."

Cross-examination:

" Q. How long had you had these fish in the box, Mr. Neal?
" A. Probably a couple of days or such a matter, maybe longer, I can't say.
" Q. From what point were they taken? (Same objection for defendant. Objection overruled. Exception for defendant.)
" A. Well, the principal part of them, I don't know. I think about half of them were taken from nets outside in the bay.
" Q. Where were the rest of them taken from?
" A. From the nets in front of my place.
" Q. You assisted in taking them out? (Same objection

by respondent.   Objection overruled.   Exception for respondent.)

"*A.* Yes.

"*Q.* You say we have a box, who do you mean by
' we ?'

"*A.* Me and my son.

"*Q.* You are engaged in fishing together ?

"*A.* I was helping him."

So far as the actual lifting of the nets or the taking of fish therefrom on the 19th or 20th is concerned, there was a conflict in the testimony, presenting a question of fact for the jury, but it was equally an offense to have the nets out, attempting to take fish with them, and respondent admits that he and his son were fishing with them at "about the 20th," the time specified in the complaint, being the time when the State deputy actually took them from the water. The court properly held, so far as this question is concerned, that the offense was admitted as charged.

We are also of the opinion that there was no error in directing a verdict, if the facts proved will sustain a conviction as a matter of law.   Respondent was charged with a misdemeanor.   He admitted his intent to take the fish, and all the essential facts, upon the witness stand. The case is ruled by *People* v. *Elmer*, 109 Mich. 493.

We shall consider the third and fourth points together. The statute prohibits fishing with nets "in any of the waters of this State except lakes Michigan, Superior, Huron, and Erie and the bays and harbors connected with said lakes, Saginaw Bay and the Sault Ste. Marie, St. Clair, Saginaw, and Detroit rivers."   It is immaterial, therefore, that the waters where the offense was alleged to have been committed were described as "the waters of Quanicassee river," so long as the proofs showed that they were not within the excepted waters.   The waters in question, as appears from the testimony, are commonly known by the name of the Quanicassee river.   "The name cannot alter the thing.   It cannot be received as a proper definition of the character of the water."   *State* v. *Gil-*

*manton*, 14 N. H. 477. Calling these waters a river in the complaint did not require the prosecution to prove any more than the statute required, viz., that they were "waters of this State," not included within the excepted waters. The "bays and harbors connected with said lakes" plainly refers to the lakes previously mentioned, and not to Saginaw Bay and the rivers mentioned afterwards, and the language negativing the so-called Quanicassee river, being a bay or harbor connected with Saginaw Bay, was mere surplusage. We do not think, however, that, under the evidence in this case, a jury would have been justified in finding that the Quanicassee was a bay or harbor of the Saginaw Bay. We are also well satisfied that, giving the evidence the most favorable construction that it will bear, it does not support respondent's contention that the Quanicassee is a part of Saginaw Bay, within the meaning of the statute. It is not necessary to determine whether the Quanicassee is a river, a drainage channel, a pond, slough, or bayou. It is sufficient that it does not come within the enumeration of the waters excepted by the statute.

We find no errors, and the court will proceed to judgment.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.