PEOPLE *v.* MURNANE.

1. CRIMINAL LAW—UNLAWFULLY DRIVING AWAY AUTOMOBILE—EVIDENCE—SUFFICIENCY.

   In a prosecution under Act No. 313, Pub. Acts 1919, charging defendant with assisting in unlawfully driving away an automobile, proof *held*, sufficient to justify the submission of the question of defendant's guilt to the jury.

2. SAME—TRIAL—INSTRUCTIONS—STATUTES—CONSTRUCTION.

   An instruction, in effect, that defendant need not have physically participated in the unlawful taking possession of the car, but that if the jury were satisfied that he was assisting in driving it away, knowing it to have been unlawfully taken, they would be justified in his conviction, *held*, a fair construction of the statute.

3. SAME—TRIAL—INSTRUCTIONS—ADMITTED FACTS.

> Where, on the trial, defendant's counsel admitted the identification of the car and its ownership, an instruction that "there are many facts not in dispute in this case, gentlemen of the jury, and what facts are not in dispute you may consider as established," *held*, not open to the objection that the reference was to facts which were disputed as not sufficiently shown, since it is apparent that the court was referring to facts not in dispute by reason of the admissions of defendant's counsel.

4. SAME — WITNESSES — INSTRUCTIONS — DEFENDANT'S FAILURE TO TAKE STAND.

> An instruction that "the respondent has not taken the stand in his own behalf, a right which he has under the law, gentlemen of the jury, and you are not to draw any unfavorable conclusions because of that fact," given in place of a lengthy request relative thereto, *held*, to fully protect the rights of defendant in this respect.

Error to recorder's court of Detroit; Heston (William M.), J. Submitted January 13, 1921. (Docket No. 122.) Decided March 30, 1921.

James Murnane was convicted of assisting in unlawfully driving away an automobile, and sentenced to imprisonment for not less than 3 nor more than 10 years in the State prison at Jackson. Affirmed.

*Chawke & Sloan,* for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *John V. Brennan,* Assistant Prosecuting Attorney, for the people.

SHARPE, J. The defendant was convicted of a violation of section 15430, 3 Comp. Laws 1915, as amended by Act No. 220, Public Acts of 1917, and Act No. 313, Public Acts of 1919. The statute as amended reads as follows:

"Any person who shall wilfully or wilfully and wantonly and without authority, take possession of and drive or take away and any person who shall assist in and be a party to such taking possession of, driving or taking away of any automobile or other motor vehicle belonging to another and lawfully standing in any street, alley, garage, stable or other place, shall be deemed guilty of a felony and on conviction thereof shall be punished by imprisonment in the State prison for a term not less than one year nor more than ten years: *Provided,* That the provisions of act one hundred five of the Public Acts of nineteen hundred and thirteen shall not apply to any person convicted of a second or subsequent offense under the provisions of this act."

It appears from the record that the car in question, a Buick roadster, was left by its owner on Cass avenue near Michigan in the city of Detroit about 5 o'clock in the afternoon of May 12, 1920; that about 10:30 that night Officers McNally and Detloff of the police department stopped a car, which proved to be the one taken, going north on Cass avenue between Sproat and Bagg streets, about a half mile from where it was taken. The curtains were down and no light burning. In it were the defendant and Barone and Alexander, who were jointly informed against with him. Barone was driving, the defendant sitting between him and Alexander. McNally asked whose car it was. Defendant spoke and said it belonged to Barone. Barone said, "No, that they hired him to take this car." On cross-examination he (McNally) was asked:

"*Q.* Did he (Alexander) ever state in your presence that he took the car?

"*A.* He stated he was with Murnane and Barone when they took it, the three of them. * * * We asked him (Alexander) how he happened to be there. He said that Barone picked him up and took him for a ride, that is what he said. And we asked Barone in front of him. He said, 'No, that they hired him to take this car.' It is not a fact that that night Mur-

nane said that Alexander was the one that picked him up, and that it was Alexander's car. Alexander never said he picked Murnane up."

Alexander, who had pleaded guilty to the charge, was called as a witness. He testified:

"I met Murnane that night, I imagine about 5:30 or 6 o'clock. I met him before this car was taken. * * * We took this car about, I am not positive of the time of that. * * * We just started to drive it up Cass avenue to my place when we were apprehended. * * * I knew Barone didn't own it. Barone was hired to steal the car. I didn't hire him. I told him of a man that would pay $200 if he wanted it; he stole it. I did not hire Barone and Murnane to steal that car. I told Judge Keidan that I hired Charles Barone to steal it. * * * I didn't steal that auto. I was hiring it to be stolen, I didn't take it. * * * Barone and I went down there for the purpose of taking this car. * * * I first got acquainted with James Murnane about eighteen months ago. Just about two years now. * * * During the past two years I have seen him several times."

He further testified that as they passed the Statler hotel he saw the defendant, whom he had met earlier that evening; that he got out and asked him to go with them to his (Alexander's) house, a distance of seven or eight miles from defendant's home; that defendant had no knowledge that the car had been unlawfully taken. He also testified that defendant told Officer McNally that the car belonged to Barone, and further, "Murnane at the time he was riding in the car did not ask Barone if Barone owned the car. There was no conversation like that"; that he had never met Barone before that night, having been "introduced to him as being a professional car thief by two or three taxi drivers"; that he had ridden with defendant on other occasions; that though he had known defendant for two years he didn't know what his occupation was.

We are of the opinion that there was sufficient proof to justify the submission of defendant's guilt to the jury.

Error is assigned on the following excerpt from the charge of the court:

"I further charge you, gentlemen of- the jury, that you need not—it is not necessary for you to find that this respondent participated in the original taking of the machine, if you find from the evidence, beyond a reasonable doubt, that this respondent rode in this car with the knowledge that it was a stolen machine—or, I won't say stolen machine—I mean that, it has been unlawfully driven away by the party with whom the defendant was then and there riding, then, gentlemen of the jury, you would be justified in bringing in a verdict of guilty as against this respondent."

The court had theretofore fully and fairly defined the charge and the proofs necessary to support it. While some of the language here used was unfortunate and somewhat involved, we are impressed from reading the charge as a whole that the jury could not have been influenced thereby to the prejudice of the defendant. Taken in connection with what precedes and follows it, the jury were instructed in effect that the defendant need not have physically participated in the unlawful taking possession of the car, but if satisfied that he was assisting in driving it away, knowing it to have been unlawfully taken, they would be justified in his conviction. We think this a fair construction of the statute.

Error is also alleged on the following instruction:

"Questions of fact are solely yours. You are to take the evidence submitted here before you and establish the facts in this case. There are many facts not in dispute in this case, gentlemen of the jury, and what facts are not in dispute you may consider as established."

213—Mich.—14.

When the prosecution were putting in proof to identify the car and prove the ownership, counsel for the defendant said: "There isn't any question as to the identification of the car, the ownership." The arguments of counsel are not in the record. It is apparent to us, and we believe the jury could not but have understood, that the court was referring to facts not in dispute by reason of the admissions of defendant's counsel rather than facts which he did dispute as not having been sufficiently established by the proofs.

This case is easily distinguishable in this respect from *People* v. *DeFore*, 64 Mich. 693, and *Durant* v. *People*, 13 Mich. 351, relied on by counsel. In both of these cases the court had called attention to the fact that certain testimony directly connecting the defendant with the crime charged was uncontradicted and that they might take the facts so testified to as established in examining the case.

Defendant did not testify as a witness and his counsel preferred a somewhat lengthy request relative thereto. The court charged:

"The respondent has not taken the stand in his own behalf, a right which he has under the law, gentlemen of the jury, and you are not to draw any unfavorable conclusions because of that fact."

We think this fully protected the rights of the defendant in this respect. We have examined the other requests preferred by counsel. They are as a rule quotations from decisions of this court, and the court would not have erred had they been given. But, after reading the testimony submitted and the charge of the court, we feel constrained to hold that the charge as given, when applied to the proofs, fully protected the rights of the defendant.

The conviction is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.