## PEOPLE *v.* DENEWETH
### Opinion of the Court

1. Criminal Law—Murder—Instructions to Jury.

   Trial court's instruction to jury that it could find defendant, being tried on the charge of first degree murder, guilty of first degree murder, guilty of second degree murder, guilty of manslaughter, or innocent by reason of insanity; but that it could not find defendant not guilty in a case where defendant admitted shooting the victim but contended that he was insane at the time, *held*, reversible error because it amounts to the direction of a verdict of guilty by the trial court, and thus deprives defendant of his right to be tried by a jury (Const 1963, art 1, § 20; CL 1948, § 750.316).

### Concurring Opinion
### Levin, J.

2. Criminal Law—Murder—Trial—Instructions to Jury.

   *Defendant tried on charge of first degree murder, who sought to prove insanity at time of commission of offense, is entitled to new trial where trial court instructed jury that it could not bring in a verdict of not guilty.*

3. Same—Plea of Not Guilty—Defense of Insanity.

   *Plea of not guilty to a criminal charge puts in issue every element of the people's case even if defendant gives the prosecution notice that he plans to interpose a defense of insanity.*

---

References for Points in Headnotes

[1, 2] 53 Am Jur, Trial § 407.
[3] 21 Am Jur 2d, Criminal Law §§ 46, 508.
[4] 40 Am Jur 2d, Homicide § 499.
[5] 21 Am Jur 2d, Criminal Law § 221.
[6] 40 Am Jur 2d, Homicide §§ 492, 493.
[7] 21 Am Jur 2d, Criminal Law § 209 *et seq.*

4. SAME—MURDER—MANSLAUGHTER—ELEMENTS OF OFFENSE.

*Intent to kill is an essential ingredient of the offenses of first degree murder, second degree murder, and voluntary manslaughter; and defendant does not admit his guilt of any of these offenses when he testifies that he shot the victim but did not intend to kill him.*

5. SAME—TRIAL—DUE PROCESS—TRIAL BY JURY—VERDICT ON THE MERITS.

*One of the substantial elements of the right to a trial by jury is the right to have the jury give a general verdict on the merits.*

6. SAME—EVIDENCE—INSTRUCTIONS TO JURY—COMMENT ON EVIDENCE.

*The trial court in instructing the jury on the law of a given case may also make such comment on the evidence as in its opinion the interest of justice may require, but it may not direct a verdict of guilty or express an opinion about what the verdict should be (CL 1948, § 768.29).*

7. SAME—MURDER—DUE PROCESS—DOUBLE JEOPARDY.

*A conviction of second degree murder serves to acquit a defendant of first degree murder if he was charged with that offense; and thus if there should be a new trial, first degree murder may not be included in the charge.*

Appeal from Macomb, Carroll (Howard R.), J. Submitted Division 1 November 7, 1967, at Detroit. (Docket No. 3,085.)   Decided December 2, 1968. Rehearing denied January 7, 1969.   Leave to appeal denied March 25, 1969.

Robert Deneweth was convicted of second-degree murder. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Max D. McCullough,* Assistant Prosecuting Attorney, for the people.

*Roy W. Rogensues,* for defendant.

QUINN, J.   Defendant was tried on a charge of first-degree murder.   MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).   Defendant introduced evidence to establish his insanity at the time the offense was committed.   He was convicted of second-degree murder.   MCLA § 750.317 (Stat Ann 1954 Rev § 28.549). His appeal questions the propriety of the trial court instructing the jury that it could not bring in a verdict of not guilty.

The instruction complained of constitutes reversible error.   *People* v. *Woody* (1968), 380 Mich 332.

This determination obviates discussion of the other point raised on appeal.

Reversed and remanded for new trial, at which the charge of first-degree murder shall be eliminated.

J. H. GILLIS, J., concurred with QUINN, J.

LEVIN, P. J. (*concurring*).   The defendant Robert Deneweth shot and killed Bernice E. Browski.   The information charged the crime of first-degree murder.   MCLA § 750.316 (Stat Ann 1954 Rev § 28.548). The jury convicted the defendant of second-degree murder.   MCLA § 750.317 (Stat Ann 1954 Rev § 28.549).

At the trial the defendant took the stand.   He admitted that he fired a gun at the victim but denied he "intended" to shoot her.

By expert psychiatric testimony he sought to prove that he acted under an "irresistible impulse" and was insane at the time of the commission of the offense.[1]

The defendant claims on appeal that the trial judge erred when he charged the jury that it could

[1] See *People* v. *Durfee* (1886), 62 Mich 487; *People* v. *Krugman* (1966), 377 Mich 559, 562.

not bring in a verdict of not guilty. We agree and remand for a new trial.

The trial judge charged:

"Now, members of the jury, in this case you have four possible verdicts. Number one, defendant may be guilty of murder in the first degree; or number two, guilty of murder in the second degree, or three, manslaughter, or four, not guilty by reason of insanity. So there are four possible verdicts. *By no means can there be a not guilty verdict. That is impossible in this case, only those four possible verdicts.*" (Emphasis supplied.)[2]

## I.

The defendant pled not guilty. A plea of not guilty puts in issue every element of the people's case. That view of the matter is not affected by the fact that the defendant gave notice as required by the statute (MCLA § 768.20 [Stat Ann 1954 Rev § 28.1043]) of his intention to introduce evidence in support of an insanity defense.[3]

---

[2] Although the trial judge instructed the jurors that they could not acquit the defendant, he did not tell them which of the three postulated guilty verdicts they were obliged to bring in. Surely the judge did not intend to direct a verdict of guilty of premeditated (first-degree) murder. No doubt he did not mean to direct a verdict of guilty of second-degree murder. He probably meant they must bring in a least a manslaughter conviction.

Nevertheless, he left the jurors to guess whether they were required to convict the defendant of murder first, murder second or manslaughter. On that ground alone, that the trial judge may well have confused and misled the jury by failing to make clear precisely what guilty verdict he was directing, this conviction must be reversed. See *People* v. *Liggett* (1967), 378 Mich 706, 714; *Aikin* v. *Weckerly* (1870), 19 Mich 482, 499.

[3] In Michigan there is no such thing as a plea of not guilty by reason of insanity. A defendant who wishes to raise an insanity defense pleads not guilty or a plea of not guilty is entered for him. Where an insanity defense is interposed the judge should charge the jury that it can bring in a general verdict of not guilty (*Underwood* v. *People* [1875], 32 Mich 1) as well as a verdict of not guilty by reason of insanity. See MCLA § 767.27b, and *People* v. *Dubina* (1943), 304 Mich 363.

Entirely apart from whether it is ever proper in a criminal case to direct a verdict of guilty, on the record in this case the trial judge could not have directed a verdict of guilty of the offenses of first-degree murder, second-degree murder or *voluntary* manslaughter.

Intent to kill is an essential ingredient of each of the 3 offenses.[4] During his testimony the defendant Deneweth denied he intended to shoot Bernice Browski. If, as he asserted, he did not intend to shoot her with the shots fired then he did not intend by such shots to kill her.

Even if the defendant had not taken the stand, in a criminal case the defendant is entitled to have the presumption of innocence weighed against the people's entire case no matter how strong it may be and to a jury resolution of at least those facts which he does not judicially admit.[5]

Although the jury was not charged on the issue of *involuntary* manslaughter, the trial judge may have assumed that because intent to kill is not an element of involuntary manslaughter, that offense being established upon proof that the accused person caused the victim's death while acting unlawfully or with gross negligence, a verdict of guilty of involuntary manslaughter could properly be directed in this case.[6]

---

[4] 3 Gillespie, Michigan Criminal Law and Procedure, §§ 1638, 1639 and 1658.

[5] *DeCecco* v. *United States* (CA 1, 1964), 338 F2d 797; *Gollin* v. *Richman* (CA 3, 1948), 166 F2d 123, certiorari denied 333 US 875 (68 S Ct 905, 92 L Ed 1151); *United States* v. *Manuszak* (CA 3, 1956), 234 F2d 421; *United Brotherhood of Carpenters & Joiners of America* v. *United States* (1947), 330 US 395, 408 (67 S Ct 775, 91 L Ed 973); *People* v. *DeFore* (1887), 64 Mich 693, 700, 701; *People* v. *Murnane* (1921), 213 Mich 205, 210; *People* v. *Karamol* (1912), 173 Mich 354; *People* v. *Hall* (1891), 86 Mich 132 (conviction cannot be predicated on admissions of counsel where intent is an issue).

[6] Definitions of the crime of involuntary manslaughter vary. The following is a general statement: "Involuntary manslaughter in-

In Michigan, manslaughter is a common-law crime, there being no statutory definition.[7] At common law there cannot be a criminal act without proof of *mens rea,* criminal intent, guilty mind, culpability or whatever term is thought best to describe this ingredient of any common-law crime.[8]

Only the legislature can define a new crime.[9] The courts may not. Manslaughter being a common-law crime in Michigan, criminal intent or culpability is an essential ingredient of that crime whether the basis of the alleged offense is unlawful or grossly negligent conduct.[10]

---

volves an unintentional killing resulting from the commission of an unlawful act not amounting to a felony, or from gross negligence." 13 MLP, Homicide, § 33. See, also, 3 Gillespie, Michigan Criminal Law and Procedure, § 1658, p 2002.

See, also, *People* v. *Wardell* (1939), 291 Mich 276; *People* v. *O'Leary* (1967), 6 Mich App 115, 120.

[7] *People* v. *McMurchy* (1930), 249 Mich 147, 154; *People* v. *Clark* (1967), 5 Mich App 672.

[8] "A criminal intent is a necessary ingredient of every crime." *Pond* v. *People* (1860), 8 Mich 150, 174. (The defendant was charged with murder and convicted of manslaughter.)

"At common law, a crime required two elements: an act and an evil intention. This view is expressed in the maxim that an act does not render one guilty unless the mind is guilty." 21 Am Jur 2d, Criminal Law, § 81, p 162.

Where the charge against the defendant is *malum prohibitum* criminal intent is not a necessary element of the offense (see footnote 10). But it is a necessary element of the offense where the crime charged is *malum in se.* See *People* v. *Sybisloo* (1921), 216 Mich 1, 4, 5.

[9] It is within the competence of the legislature to make the commission of an act or an omission to act a crime without regard to the presence of criminal intent. This the legislature has frequently done in the exercise of the police power. Thus, laws make violation of the liquor law, fishing law and weights and measures laws, for example, crimes without regard to culpability. But only the legislature may do so.

We are not faced with a question of statutory construction, *i.e.,* whether in this particular case the legislature intended that culpability be an ingredient of the crime. That was the kind of question which faced the United States Supreme Court in *Morissette* v. *United States* (1952), 342 US 246 (72 S Ct 240, 96 L Ed 288). Mr. Justice Jackson's illuminating opinion traces the history of the common-law concept that there cannot be a crime without culpability through the development of the exception for the newly created statutory offenses.

[10] That criminal intent or culpability is an essential ingredient of

Even if the defendant had admitted that the shots he fired caused Bernice Browski's death, he did not thereby admit his conduct was unlawful or culpable. Since the defendant did not admit that he acted criminally or culpably in raising and firing the gun, whether his actions should be so characterized was on this record an issue for jury resolution.

## II.

Turning to the question whether it is ever proper for a judge to direct a verdict of guilty in a criminal case, it has already been observed that, in a criminal case, except for the facts the defendant himself judicially admits, the people's evidence is disputed by the presumption of innocence which should be weighed against the people's evidence however overwhelming and even if not otherwise contradicted.[11]

---

involuntary manslaughter appears from the following statement of the Michigan Supreme Court in *People* v. *Campbell* (1927), 237 Mich 424, 428:

"In this state, under the common law, one is not criminally responsible for death from negligence unless the negligence is so great that the law can impute a criminal intent. *If death ensues from negligence which shows a culpable indifference to the safety of others, the negligence is said to be gross or wanton or willful, and is equivalent to criminal intent, a necessary element of every common-law crime.* One whose acts cause death under such circumstances is guilty of involuntary manslaughter or comomn-law negligent homicide." (Emphasis supplied.)

Similarly, see *People* v. *Marshall* (1961), 362 Mich 170, 172, where our Supreme Court declared in another involuntary manslaughter case, "It is axiomatic that 'criminal guilt under our law is personal fault.'" See, also, *People* v. *Barnes* (1914), 182 Mich 179, 198, 199.

Generally, see 40 Am Jur 2d, Homicide, § 92.

[11] See authorities cited in footnote 5.

Even where the defendant judicially admits the essential elements of the offense, it is to be doubted whether there is any right to direct a verdict of guilty. If after listening to a defendant's testimony a trial judge were to turn to him and correctly advise him that legally speaking his testimony was the equivalent of a plea of guilty, but, nevertheless, the defendant stubbornly insisted that he did not wish to plead guilty, the trial judge could not enter a plea of guilty for him. A plea of guilty can only be entered for an accused person who desires to have such a plea entered. GCR 1963, 785.3, MCLA § 768.35 [Stat Ann 1954 Rev § 28.1058]). That being the case, since

It was early established in our jurisprudence that one of the substantial elements of the constitutional right to trial by jury is the right to have the jury "give a general verdict on the merits." See *People v. Marion* (1874), 29 Mich 31, 40; *Underwood v. People* (1875), 32 Mich 1, 2; similarly, see *People v. Clark* (1940), 295 Mich 704, 707, and *People v. Anschutz* (1953), 335 Mich 375, 380. This principle was recently reiterated by our Supreme Court in *People v. Woody* (1968), 380 Mich 332, where the Court admonished us that even in a case, such as this case of Deneweth, where the defendant interposes an insanity defense the issue is not defendant's sanity at the time of the offense but rather his guilt or innocence, that, even in such a case as this, the jury can bring in a general verdict of not guilty.[12]

The case for judicial power to direct verdicts in criminal cases is based on logic. Stated as a syllogism, it becomes:

Major premise: juries decide facts, judges decide law. Minor premise: all fact issues in the case at hand are admitted or undisputed. Conclusion: there is nothing for the jury to decide.

---

a trial judge may not enter a plea of guilty for an accused person unwilling to have it entered, surely he may not properly take the accused's testimony and construct out of it the equivalent of a plea of guilty.

[12] The following is from the report in *People* v. *Woody, supra,* pp 337, 338:

"In affirming the conviction the Court of Appeals held:

'The plea of not guilty by reason of insanity made the issue of defendant's sanity at the time of the offense, not whether he killed his wife.'

"We feel obligated to point out that any implication from the above language that in these circumstances the jury cannot bring in a general verdict of not guilty should be dispelled. This was early decided and we do not find the holding has ever been disturbed. [Citing and quoting from *People* v. *Marion, supra,* and *Underwood* v. *People, supra.*]

"To the extent then that the language of the Court of Appeals be read to mean the contrary, we disapprove it."

This logical proposition has strong appeal for the legal mind. However, the case for jury decision is based on the clear imperative of the United States Constitution and our own State constitution. A right of jury trial is now guaranteed by the Federal constitution in a case such as this[13] and has always been guaranteed by our own State constitution.[14]

The jury of 12 laymen is deeply rooted in the Anglo-American legal tradition. Especially in criminal trials it has been regarded as one of the bulwarks of democracy, preserving the judgment of the common man against possible injustices of political oppression or judicial formalism.

"There can, within the meaning of the constitution be no trial of a cause by jury unless the jury deliberates upon and determines it. It is doubtless true that, in a certain sense and to a limited extent, this doctrine makes the jury the judges in criminal cases of both law and fact; but this is the necessary result of the jury system." *United States* v. *Taylor* (CCA Kan, 1882), 11 F 470, 471, 472.

The foregoing view of the matter has not been universally accepted. The dissimilarity between the amateur, egalitarian institution of the jury and the professional, rationalist judiciary with which it works has engendered a heated controversy which has stretched over the years and continues today.[15]

There is a line of cases in this State approving instructions charging juries that they must bring in a guilty verdict. It appears that the earliest case approving such an instruction (*People* v. *Richmond* [1886], 59 Mich 570) involved a violation of the

---

[13] *Duncan* v. *Louisiana* (1968), 391 US 145 (88 S Ct 1444, 20 L Ed 2d 491).

[14] Const 1835, art 1, §§ 9, 10, 11; Const 1850, art 6, §§ 27, 28; Const 1908, art 2, §§ 13, 19; Const 1963, art 1, §§ 14, 20.

[15] See Kalven & Zeisel, The American Jury, Little, Brown & Co., Boston (1966).

liquor law. This was an offense *malum prohibitum* and it was not necessary to prove criminal intent or culpability. The defendant had admitted all the facts necessary to convict him.[16] Such instructions were later approved in other *malum prohibitum* cases. *People* v. *Kirsch* (1887), 67 Mich 539, and *People* v. *Neal* (1906), 143 Mich 271 (illegal fishing); *People* v. *Gardner* (1906), 143 Mich 104 (violation of garbage ordinance); *People* v. *Stewart* (1911), 167 Mich 417 (peddling goods without a license), reversed on other grounds (1913), 232 US 665 (34 S Ct 476, 58 L Ed 786). Similarly, see *People* v. *Elmer* (1896), 109 Mich 493, 496 (fortune-telling without a permit). These cases all concerned relatively minor charges carrying correspondingly light penalties.

In *People* v. *Neumann* (1891), 85 Mich 98, 104, the Court attempted to rationalize its prior pronouncements with the constitutional imperative. It declared that it is never proper for a trial judge to direct a verdict, but that he may tell the jury it is their duty to convict in a case where there is no question of intent, the facts are admitted and there are no inferences about which reasonable men may differ.

*Neumann's* dictum was followed in reversing directed verdicts in *People* v. *Collison* (1891), 85 Mich 105 (illegal fishing); *People* v. *Remus* (1904), 135 Mich 629; *People* v. *Doyle* (1910), 160 Mich 423 (liquor law violation cases); and *People* v. *Lathers* (1923), 223 Mich 92 (obscenity case).

---

[16] Other liquor-law violation cases where guilty verdicts were directed are *People* v. *Lyng* (1889), 74 Mich 579, reversed on other grounds *Lyng* v. *Michigan* (1890), 135 US 161 (10 S Ct 725, 34 L Ed 150); *People* v. *Ackerman* (1890), 80 Mich 588; *People* v. *North* (1908), 153 Mich 612, 614; *People* v. *Damskey* (1914), 180 Mich 664. Similarly, see *People* v. *Schottey* (1898), 116 Mich 1; *People* v. *Berridge* (1920), 212 Mich 576.

In *People* v. *Heikkala* (1924), 226 Mich 332, the Supreme Court again reviewed its prior decisions on the propriety of directing a verdict in a criminal case and stated that they could not be harmonized. The Court then adopted the *Neumann* analysis in reversing defendant's manslaughter conviction (p 337):

"A trial judge, having properly applied the law to the facts in a criminal case in which intent is not involved, and where the facts are undisputed, may say to the jury that it is their duty to bring in a verdict of guilty, but he may not go further and peremptorily direct or compel such verdict. The responsibility for the verdict must be left with the jury. It must be their verdict, not the verdict of the judge. Whether such undisputed evidence has been adduced by the state alone, or by both the state and the defendant, the rule is the same. The plea of not guilty having been entered and being undetermined, finding a verdict is for the jury."

We have not found any case holding that a trial judge may direct a guilty verdict or instruct a jury that its duty is to convict where the offense charged is *malum in se* and, thus, involves the element of intent—intent in the sense of willfulness (which is the kind of intent essential to convict one of voluntary manslaughter, second-degree or first-degree murder) or intent in the sense of culpability (which must be found before conviction of any common-law or *malum in se* crime, including involuntary manslaughter).

In *People* v. *Howard* (1914), 179 Mich 478, the defendant was convicted of assault with intent to do great bodily harm. The trial judge seized on some of the defendant's testimony and charged the jury that they could only determine whether he was guilty of assault with intent to commit murder or to

commit great bodily harm and refused a requested instruction allowing in addition the verdicts of simple assault and battery or not guilty. The conviction was reversed. Similarly, see *People* v. *Slater* (1910), 164 Mich 156 (jury was instructed that it was their duty to convict).

In the more recent cases in which the question has arisen, the matter has generally been considered in terms of whether the trial judge has exceeded his statutory authority to "comment on the evidence" added by procedural amendment in 1927.[17]   In *People* v. *Lintz* (1928), 244 Mich 603, the Michigan Supreme Court, considering for the first time the new procedural provision authorizing comment by the judge during his charge to the jury, ruled that the judge (pp 617, 618):

"should not express an opinion as to what he thinks the verdict should be or how he thinks the jury should decide the case.   *   *   *   It must be apparent, on review, that the verdict rendered is that of the jury, and not the expressed opinion of the trial court."

In *People* v. *Anschutz* (1953), 335 Mich 375, the defendant was convicted of selling intoxicating liquor to a minor. The trial judge charged the jurors that it was their duty to bring in a verdict of guilty, adding, however, that he had no power to compel them to do so. The jury brought in the requested guilty verdict. The Michigan Supreme Court characterized the "duty to convict" instruction as a direction of a guilty verdict and reversed the conviction citing *Lintz, Underwood, Heikkala*

---

[17] The following provision was added in 1927 with the enactment of the code of criminal procedure:

"The court shall instruct the jury as to the law applicable to the case and in its charge may make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require."   PA 1927, No 175, ch 8, § 29, MCLA § 768.29, Stat Ann 1954 Rev § 28.1052.

and *Neumann* and reiterating that one of the substantial rights of the constitutional right to a jury trial is the right to have the jury render a general verdict on the merits.

The Court continued (p 380): "It is clear from the authorities that a verdict of guilty should not be directed unless the facts are undisputed or admitted," and then concluded that there was a disputed fact and there was no justification for depriving the accused vendor in that case of his right to a jury determination of his guilt or innocence.

Even though the *Anschutz* Court did not disassociate itself completely from the notion that it is possible to direct a verdict of guilty in a criminal case, its realistic statement treating for purposes of appellate review the duty-to-convict instruction as the equivalent of the direction-to-convict instruction, read in the light of the Court's statements regarding the comment power, leads me to conclude that a trial judge may neither direct a verdict of guilty nor instruct a jury that it is their duty to bring in such a verdict.

The pronouncements allowing directed verdicts were overruled by *Neumann* and *Heikkala,* which held that the furthest the court may go, and then only in a case where intent is not an issue and the "facts" are undisputed, is to instruct the jury that it is their duty to bring in a guilty verdict. That concept was in turn superseded by *Lintz* which forbade the trial judge to "express an opinion as to what he thinks the verdict should be or how he thinks the jury should decide the case." The *Lintz* approach has been repeatedly followed by the Court in later cases.[18]

---

[18] *People* v. *Bigge* (1941), 297 Mich 58, 72; *People* v. *Padgett* (1943), 306 Mich 545; *People* v. *Clark* (1954), 340 Mich 411, 421 (The defendant was convicted of the statutory offense of negligent

We are convinced that *Woody* reflected the current thinking of our Supreme Court when it reasserted Michigan's adherence to the principle that one of the substantial elements of the constitutional guarantee of a trial by jury in a criminal case is the right to have the jury give a general verdict on the merits.

The impaneling of the jury for this case was commenced while a jury in a previous case was still deliberating. When that jury reached a verdict, they were brought into the courtroom in the presence of the panel from which a jury for this case was to be chosen. They announced a verdict of not guilty, whereupon the trial judge in this case told them:

---

homicide. Criminal intent is not an element of that statutory offense. [*People* v. *McMurchy* (1930), 249 Mich 147]); *People* v. *Lewis* (1933), 264 Mich 83, 87; *People* v. *Barmore* (1962), 368 Mich 26, 28; *People* v. *Oates* (1963), 369 Mich 214. See, also, *People* v. *Wichman* (1968), 15 Mich App 110.

The interpretation of the power to "comment" reflected in the Michigan case law parallels that recommended by the American Bar Association special committee on minimum standards for the administration of criminal justice, standards relating to trial by jury, § 4.7 and accompanying commentary on § 4.7(b), pp 126–129.

The standard was first recommended by the advisory committee on the criminal trial. It was later approved by the senior body, the special committee on minimum standards for the administration of criminal justice.

It was disapproved by the councils of the sections on criminal law and judicial administration because those whose views prevailed feared introduction of the power to comment in those jurisdictions (a majority) where it is not now allowed. It was also felt by some that comment in a case where the defendant has not taken the stand might conflict with the holding in *Griffin* v. *California* (1965), 380 US 609 (85 S Ct 1229, 14 L Ed 2d 106); see, also, *Desmond* v. *United States* (CA 1, 1965), 345 F2d 225, 14 ALR3d 718, and that to permit comment only where the defendant takes the stand might pose other problems with respect to the defendant's right to take the stand which outweigh the value of such comment.

The proposed standard was deleted by the ABA house of delegates. We are advised there are no plans to reintroduce it or a variation thereof.

See 54 American Bar Association Journal, pp 1020, 1021 (1968); ABA Report No 2, Special Committee on Minimum Standards for the Administration of Criminal Justice (Revision of Report No 1), pp D-5, D-6.

"This is the worst miscarriage of justice I have seen in my 10 years on the bench."[19]

In chambers, the judge acknowledged that his comments before the jury panel might have prejudiced the entire panel by causing them to fear similar chastisement if they returned a not guilty verdict in this case. However, he ruled that any prejudice could be cured by special instructions directing the panel to disregard what he had said. After giving such instructions the court proceeded to the selection of a jury and the trial.

Our disposition of this case makes it unnecessary for us to decide the defendant's claim that the special instructions did not cure the possible prejudice. The incident does serve, however, to illustrate that Michigan juries can and do acquit defendants whom the judge thinks to be guilty beyond a reasonable doubt.

The jury's verdict convicting Deneweth of second-degree murder impliedly acquitted him of first-degree murder. On the retrial Deneweth may not be charged or convicted of first-degree murder. *People v. Farrell* (1906), 146 Mich 264; *People v. Gessinger* (1927), 238 Mich 625; *Green v. United States* (1957), 355 US 184 (78 S Ct 221, 2 L Ed 2d 199, 61 ALR2d 1119).

---

[19] See American Bar Association special committee on minimum standards for the administration of criminal justice, standards relating to trial by jury, § 5.6 (pp 163, 164):

"While it is appropriate for the court to thank jurors at the conclusion of a trial for their public service, such comments should not include praise or criticism of their verdict."