PEOPLE *v.* LINTZ.

1. CRIMINAL LAW—FALSE PRETENSES—DIRECTED VERDICT NOT WARRANTED UNDER THE EVIDENCE.

Where, in a prosecution for obtaining money under false pretenses, there was testimony by the prosecuting witness that, believing and relying upon the false representations of defendants, real estate brokers, that there was a mortgage upon the farm for which he was exchanging his home, and which he paid, when in fact there was no mortgage upon it, and that the defendants received the amount of the claimed mortgage in addition to their commission, defendants' motion for a directed verdict was properly denied.

2. SAME—COMMENTS OF JUDGE UNDER CRIMINAL CODE MUST NOT IMPAIR JURY TRIAL.

While, under the criminal code (Act No. 175, Pub. Acts 1927, chap. 8, § 29), the presiding judge, in instructing the jury, may comment on the evidence, in making such comment care should be exercised, and it should be borne in mind that, under the Constitution (article 2, § 13), the right of trial by jury is secured to every person accused of crime, and that one of its substantial elements is the right of the jury to give a general verdict on the merits.

3. SAME—PURPOSE IN ALLOWING JUDGE TO COMMENT ON EVIDENCE.

The purpose of the provision in the criminal code allowing the presiding judge to comment on the evidence is to give him greater control in the trial of criminal cases, to enable him to exercise a judgment acquired by years of experience in weighing testimony, and thus to aid the jury in the determination of disputed questions of fact.

4. SAME—JUDGE MAY NOT TREAT DISPUTED FACTS AS PROVEN.

While the trial judge may, in making such comment, review the testimony, the language employed must be such as will not leave in the minds of the jury a fixed opinion that a disputed fact has been proven and that they must so consider it in arriving at their verdict.

5. Same—Judge Should Make Clear to Jury That They Are to Decide Facts.

In expressing an opinion, which must relate only to matters in the record or occurring at the trial bearing upon the issue to be decided, the trial judge should not state what he thinks the verdict should be or how he thinks the jury should decide the case, but he should make it clear to the jury that he is merely stating his opinion and not directing them to be guided by it, and that they are to decide the facts on their own view of the evidence.

6. Same—Duty of Judge to Marshal and Sum up Evidence to Aid Jury in Reaching Just Verdict.

Under the statute, it is the duty of the trial judge to call the attention of the jury to particular facts, marshal and sum up the evidence relating to each issue to be determined, comment upon the tendency, force, and comparative weight of conflicting testimony bearing upon them, and point out any matter which legitimately affects the testimony of a witness or his credibility, when in his opinion their consideration by the jury is necessary and will lead to a just verdict, providing he makes it plain that his opinion of the facts is not controlling, and that the ultimate determination is left to them.

7. Same—Charge From Which Jury Understands Judge Expects a Verdict of Guilty is Prejudicial.

Where, in a prosecution for obtaining money under false pretenses, from the judge's comments on the evidence in his charge to the jury, under the criminal code, the jury could not fail to understand that the facts stated therein were, in the opinion of the judge, fully established by the proofs and justified the conviction of defendants, and that the jury were expected, if not instructed, to so find, the constitutional rights of defendants were invaded, resulting in prejudicial error.

8. Fraud—May be Predicated on Promises in Certain Cases.

Fraud in certain cases may be predicated on promises made for the purpose of deceiving and without any present intention to perform.

9. Criminal Law—Instruction That Promises Might be Relied on Erroneous Where no Promises Alleged or Shown.

Where, in a prosecution for obtaining money under false pretenses, the information contained no averment that any prom-

ises had been made, and the record discloses none made by defendants, the trial judge was in error in instructing the jury that promises might be relied on to sustain the charge.

Error to Genesee; Black (Edward D.), J. Submitted June 14, 1928. (Docket No. 128, Calendar No. 33,755.) Decided December 4, 1928.

M. C. Lintz and R. Whitesell were convicted of obtaining money under false pretenses. Reversed.

*W. E. Barrett* and *C. A. Withey,* for appellants.

*Wilber M. Brucker,* Attorney General, *William R. Roberts,* Prosecuting Attorney, and *Charles D. Beagle,* Assistant Prosecuting Attorney, for the people.

SHARPE, J. The defendants were convicted on a charge of having, on the 30th day of September, 1927, at the city of Flint, "with intent to cheat and defraud one Arthur L. Loveland and fraudulently to obtain $565 in money from him," falsely represented to him that a certain farm which he "was going to buy had a mortgage on it" amounting to $565; that he, the said Loveland, believed said false pretenses and representations, and was induced by means thereof to deliver the sum of $565 to said defendants "in order that they might pay off the mortgage," and that said defendants designedly, and by means of said false pretenses and representations, did unlawfully and fraudulently obtain from said Loveland the said sum of $565, with intent to cheat and defraud him of the same; whereas in truth and in fact there was no mortgage on the premises.

The complainant, Loveland, testified that he was desirous of exchanging his home in the city of Flint for a farm; that defendants induced him to visit a farm near Clio, owned by Walter Franklin; that he

did so, accompanied by the defendant Lintz; that on their return to Flint Lintz asked him how he wanted to deal, and he said he would exchange his home subject to a mortgage on it of $2,500 for the farm "free and clear;" that Lintz said he thought there was a mortgage on the farm of $565, and he said if there was he would not deal, and that Lintz said he would find out; that the next day both defendants came to his home and wanted him to sign "a contract agreement," and that he refused to do so; that Whitesell said he would get Mr. and Mrs. Franklin to sign an agreement, and he then said if they would do so he would also; that they returned the next day with an agreement, signed by the Franklins, stating their place was "free and clear from all incumbrance except a mortgage of $565," and that Lintz said that Whitesell would take care of the mortgage, that they would borrow the money at the Clio bank to pay the money back and pay up the taxes, and that he relied thereon and he and his wife then signed the agreement presented to them.

This instrument was an offer to Lintz to exchange the home in Flint subject to the mortgage of $2,500 for the Franklin farm "free and clear of all incumbrance except one mtg. of $565 back." Both Loveland and his wife testified that certain matter was added thereto after they signed it. This is denied by both defendants. A copy was not left with the Lovelands.

It may be here stated that the Franklin contract which Whitesell had procured was an agreement on the part of Franklin and his wife with Whitesell to exchange their farm "free and clear of all incumbrance" for the Loveland home, subject to the $2,500 mortgage thereon. It contained no reference to a mortgage of $565 on the farm, as testified to by Loveland, and there was none on it.

On September 30th the Lovelands and the defendants went to the office of the register of deeds, where the abstracts were brought down to date. Whitesell then had the deed from the Franklins. The deed from the Lovelands was there executed. They then went to a bank at Clio, where the deal was consummated by the Lovelands' executing a mortgage on the farm to the bank in the sum of $1,000. Of this amount, $565 was paid to Lintz, $180 paid, as Loveland claims, to both defendants for their commission on the sale, certain back taxes were deducted, and the balance retained by Loveland. On the following day the Lovelands went to the farm and discovered, as they claim for the first time, that there had been no such mortgage thereon.

It is Loveland's claim that he was deceived by the representation made by the defendants that this mortgage was on the farm, and that he executed the $1,000 mortgage and paid the $565 out of the proceeds thereof in reliance thereon. It is upon this claimed representation that the charge in the information is based.

The defendant Lintz denied making any such representation. He testified:

"I told them I would trade subject to $565; I did not say whether it would be placed on or would not. They knew that there was no mortgage on there; the deeds all showed it. They read over the abstract. The abstract people told them it was free and clear. They understood when the deal was through they were to give me a mortgage personally for $565. I paid them absolutely what was agreed to."

He denied that there was any statement made by him or Whitesell that the $565 was to cover a mortgage Whitesell had paid off on the property.

Whitesell testified that the Lovelands were told in the office of the register of deeds that the title to

the Franklin farm was clear except an old mortgage of $60, which had not been discharged; that Loveland paid him his commission in the bank; that he—

"did not pay me $565; he paid Mr. Lintz $565 to take care of the mortgage Mr. Lintz was supposed to have against the farm. * * * He said, 'Here is your $565,' to Mr. Lintz, and he handed it to him."

A motion for a directed verdict at the conclusion of the people's case, and renewed when the proofs were closed, was denied. A motion for a new trial was made and denied. The defendants were sentenced to a maximum term of 10 years, with a minimum of 5 years, and here seek review by writ of error.

1. *Directed Verdict.* Defendants' counsel urged that the proofs clearly show that Loveland paid no more for the farm than he had agreed to pay in his contract with Lintz; that it was immaterial whether a part of the purchase price went to Lintz or to pay off a mortgage of $565, and that a verdict should have been directed for this reason. Loveland was without the advice of counsel. He testified that he relied on what he claims the defendants told him. He paid a commission to Whitesell for the services rendered by him in making the exchange of properties. If he made the deal relying on a representation of the defendants that the farm was incumbered to the extent of $565, and executed the $1,000 mortgage for the purpose of retiring this mortgage, and he thereby was induced to and did pay the sum of $565 more for the farm than he believed he was required to pay to Franklin, and if the jury should so find, we are of the opinion that the charge in the information would be sustained. The motion to direct was properly denied.

2. *Error in the Charge.* Defendants' counsel contend that the instructions given were in effect a direction to the jury to convict their clients. The prosecution insists that such instructions were warranted by the provision in our new criminal code (Act No. 175, Pub. Acts 1927, chap. 8, § 29). For the benefit of the bench and bar of the State, and in order that consideration may be given to the charge as a whole, we insert it as a footnote hereto.[1]

---

[1] CHARGE OF THE COURT.

"Members of the Jury: This is an action brought in the name of the people of the State of Michigan against the respondents, charging them with obtaining money by false and fraudulent representations. I charge you under the law of the State of Michigan, at the opening of the case the respondents are presumed to be innocent and that presumption of innocence follows them throughout the trial of the case until there has been evidence introduced that convinces your minds to the contrary, and that beyond a reasonable doubt. A reasonable doubt is a fair doubt, a doubt based on reason and common sense, not an imaginary, far-fetched doubt, but just what the words themselves indicate, a doubt that is reasonable in the minds of fair and honest jurors.

"You, as jurors, are the sole judges of the facts of the case. You see the witnesses when they take the witness stand, have an opportunity to observe the manner in which they give their testimony, and it is from that that you make up your verdict.

"I charge you, under the law, that if you find that there were false representations made, or promises by these parties, they would be guilty as charged in this information.

"Now, under the statute of 1927, the court is permitted to say to you some things in regard to the testimony in the case, and the witnesses who give that testimony. I say to you in the first place here is a contract that was given by Walter Franklin and Elizabeth Franklin, his wife, to Mr. Whitesell, wherein he promises and agrees to exchange one 30-acre farm described as follows: the north one quarter, and so on—a description of the property— and includes therein 50 chickens and 5 ducks and one drake, for one house and lot at 808 Patrick street, Flint, Michigan, subject

Section 29 reads as follows: ˙

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

This code was prepared by a commission appointed by the governor under Act No. 15, Pub. Acts 1926 (extra session). The commission was assisted in its work by committees appointed by the Association of.State Judges and the State Bar Association. Its report, with few important amendments by the legislature, was enacted into a law, and has been commended generally by the people of the State. Among the changes in procedure is that above quoted, and it is before us for the first time for construction. Before its enactment, this court had held that, in certain classes of cases in which an intent to violate the law was not involved, if the evidence

---

to a mortgage of $2,500. And it goes on further and says, 'said party of the second part hereby covenants and agrees that he shall exchange one house and lot at 808 Patrick street, free and clear of all incumbrance except a mortgage of $2,500 held by the bank in Flint.' I charge you, that the face of this contract, given by Franklin to one of the defendants, Mr. Whitesell, shows that Mr. Franklin has authorized him to exchange his farm free and clear of any incumbrance, for house and lot No. 808 Patrick street, Flint, Michigan, subject to a mortgage of $2,500.

of a violation was not in dispute, the trial court might instruct the jury that the evidence disclosed the guilt of the accused, and that it was their duty to so find by their verdict. But, even in such cases, he could—

"not go further and peremptorily direct or compel such verdict. The responsibility for the verdict must be left with the jury. It must be their verdict, not the verdict of the judge." *People* v. *Heikkala,* 226 Mich. 332, 337.

This statute provides that the court shall "make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require." In making such comment, care must be exercised. It must always be borne in mind that under our Constitution (Art. 2, § 13) "the right of trial by jury" is secured to every person accused of crime, and "one of its substantial elements is the right of the jury to give a general verdict on the merits." *Underwood* v. *People,* 32 Mich. 1 (20 Am. Rep. 633).

The purpose of this and other procedural amendments to the criminal law in the code was to give the trial judge a greater control in the trial of criminal cases; to enable him to exercise a judgment acquired by years of experience in weighing the testimony of witnesses and thus to aid the jury in the determination of disputed questions of fact. By statute and

---

There is a proposition that has been made by Mr. and Mrs. Franklin to exchange properties, their farm free and clear, with Mr. Loveland for his house and lot, subject to a mortgage of $2,500. Now, Mr. Loveland had the right, had these men been fair and honest with him, to know that he was getting this farm free and clear because Mr. Franklin has so stated in this agreement, that he would exchange the farm for the city property subject to that mortgage. The fact that Mr. Loveland did exchange, believing that there was a mortgage of $565 on that property

also by constitutional provision in some of the States, trial judges are expressly forbidden to charge the jury on questions of fact. A review of these provisions will be found in 1 Brickwood's Sackett on Instructions to Juries, p. 126 *et seq.* The rule in the English courts as stated by Chitty is therein said to be:

"It is the practice for the judge at *nisi prius* not only to state to the jury all the evidence that has been given, but to comment upon its bearing and weight, and to state the legal rules upon the subject and their application to the particular case, and to advise them as regards the verdict they should give."

This practice may fairly be said to be that pursued in our Federal and many of our State courts, including New York and Massachusetts.

In *Lovejoy* v. *United States,* 128 U. S. 171, 173 (9 Sup. Ct. 57), it was said:

"It is established by repeated decisions that a court of the United States, in submitting a case to the jury, may at its discretion express its opinion upon the facts, and that such an opinion is not reviewable on error, so long as no rule of law is incorrectly stated and all matters of fact are ultimately submitted to the determination of the jury."

The provision in our code, we think, evidences an intent on the part of the legislature to adopt this

---

does not mean anything. These people promised to make this exchange with these real estate men as the agents, and giving them the farm free and clear. These men, by means of representations which they made to Loveland, and which they drew up in the so-called option here, put in a mortgage of $565 against that property which was not there, and which these real estate men knew was not there, and which Mr. Franklin had agreed to exchange free and clear, in other words, they put in this contract a proposition whereby they would get $565 for nothing from

practice. The manner in which the authority conferred may be exercised by trial courts is well stated in the quotations which follow.

In 1 Zoline's Federal Criminal Law and Procedure, §§ 437, 438, it is said:

"The Federal rule is similar to that held by the English courts that the presiding judge may, if he deems it to be proper, sum up the facts to the jury; if no rule of law is misstated, and the questions of fact are ultimately submitted to the determination of the jury, an expression of opinion upon the facts is not reviewable on error. It is the duty of the presiding judge to call the jury's attention to particular points, and to comment upon the tendency, force and comparative weight of conflicting testimony. But it is improper for the court to arbitrarily single out certain facts without consideration of other modifying facts. In reviewing the evidence, the judge must be careful not to unduly emphasize certain parts of the testimony nor prejudice the jury by his actions or words. He must constantly keep in mind, especially in criminal cases, that the importance and power of his office and the theory and rule requiring impartial conduct on his part make his slightest action or suggestion of great weight with the jury.

"The jurors are the judges of the fact; expressions of opinion by the court on a question of fact should be so guarded as to leave the jury free in the exercise of its own judgment. They should dis-

---

Mr. Loveland because they knew Mr. Franklin had agreed to exchange the properties, with his farm free and clear; that is the transaction. Men who engage in that kind of business, or real estate men who go to these people for the purpose of exchanging these properties, deliberately place into this contract $565 that Mr. Franklin did not know was in there, and they deliberately prepared papers whereby they would take from Mr. Loveland $565. They knew that, they both knew it, because the contract was drawn by one man whereby the farm was to go free and

tinctly be made to understand that the judge's statement is not given as a point of law by which they are to be governed, but as a mere opinion to which they should attach no more weight than it is entitled. The trial judge must not usurp the functions of the jury or appeal to their passion or prejudice, as the jury is naturally sensitive to the court's expressions of opinion concerning the issues of fact in any case. The reviewing court will take judicial notice that the influence of the trial judge on the jury is so great that his slightest word or intimation is received with deference and may prove controlling.''

In 16 C. J. p. 940, the rule is thus stated:

''But the greatest caution should be used in the exercise of this power, and the jury should be left free and untrammeled in the determination of questions of fact which are to be passed on by them; and the court should not charge, as a matter of law, that a particular fact is or is not proved, even though the evidence is clear and uncontradicted.

''Whenever the judge delivers his opinion to the jury upon a matter of fact, it should be delivered as a mere opinion, and not as a direction, and the jury should be made to understand clearly that they are to decide the fact on their own view of the evidence, and that the judge interposes his opinion to aid them in case of difficulty, or to inspire them with confidence in cases of doubt.''

The following quotation from *McKenna* v. *People*,

---

clear, and the other man drew an option from Loveland whereby he said there was a mortgage of $565 on this property. The $565 was money that was taken without any consideration, without any knowledge these men had, Mr. Franklin or Mr. Loveland.

''A false representation is a representation that is false, that the other party believes to be true, and, believing that representation to be true, they act upon it, and that is the case here.

''Now, they talk about the commission of $180. It was shown the $180, if it was 3 per cent. of the value of each property, the

81 N. Y. 360, 362, is expressive of the views of that court:

"But the opinion of the judge, considered as an opinion upon the weight of evidence, was stated much stronger than it ought to have been, and was calculated to make an erroneous impression upon the minds of the jurors, and with that impression, carrying with them into the jury-room the weight of the opinion, it cannot be said that the prisoner had, at the outset of their deliberations, an even chance that the conclusions of the jury would be unbiased. It is said however that as the verdict was not 'murder in the second degree,' but manslaughter in the third degree, the objectionable charge could have done no harm. There is some plausibility in the suggestion, but it is by no means controlling. Can it be said that the jury were not influenced by it, and knowing the conclusion of the court, did not throw it into the scale, so that it preponderated against the prisoner? I think they would feel relieved, to some extent at least, from the necessity of estimating for themselves the value of such evidence, and therefore that the observation of the judge was not only erroneous, but material. The exception taken thereto must prevail not only upon principle, but upon authority."

One of the leading cases in the United States Supreme Court in which this question was presented is

value of each property would be $6,000. They have included here a $175 commission on the farm of Mr. Franklin; they have valued that farm at $5,836, 30 acres of land; they are only taking a 3 per cent. commission, but they are valuing the farm at practically $300 an acre.

"Now, a man who acts as an agent in a real estate deal can act for both parties if he says to each party, 'I represent the other party, and he is to pay me a commission,' and he also says to the other party, 'I am representing the first party and he also

*Starr* v. *United States,* 153 U. S. 614 (14 Sup. Ct. 919), in which the opinion was written by Chief Justice Fuller and concurred in by the other justices. The conclusions reached after a lengthy discussion and a quotation of the extracts from the charge which were complained of are well stated in the syllabus:

"While it is well settled in Federal courts that the presiding judge may sum up the facts to the jury, and express an opinion upon them, he should take care to separate the law from the facts, and leave the latter in unequivocal terms to the judgment of the jury.

"The circumstances of this case apparently aroused the indignation of the judge who presided at the trial of it in an uncommon degree, and that indignation was expressed in terms which were not consistent with due regard to the right and duty of the jury to exercise an independent judgment in the premises, or with the circumspection and caution which should characterize judicial utterances; and this court is constrained to express its disapprobation of this mode of instructing and advising a jury."

What a trial judge may or may not say to a jury in a particular case cannot be stated in an opinion. His instructions must be read in the light of the charge preferred against the accused and the evidence submitted on the trial. In the first place,

is to pay me a commission.' By that information he informs both parties, 'You must look out for your own interests; if this deal goes through you must know I am representing the other fellow as well as you, and you cannot depend upon what I say.' In other words, as has been stated, then those two men are notified, and they will carry on their transaction at arm's length, that is, not relying on any statement that a real estate man may make, but otherwise a real estate man has no right under the law to represent both parties and claim a commission.

extreme care should be exercised in not stating to the jury that facts in dispute are established. While he may, in making such comment, review the testimony, the language employed must be such as will not leave in the minds of the jury a fixed opinion that a disputed fact has been proven and that they must so consider it in arriving at their verdict. Any opinion he expresses must relate to matters in the record or occurring at the trial bearing upon the issue to be decided; he should not express an opinion as to what he thinks the verdict should be or how he thinks the jury should decide the case. In expressing an opinion, he should make it clear to the jury that he is merely stating his opinion, and not directing them to be guided by it. They must be given to understand that they are to decide the facts on their own view of the evidence, and that the opinion is expressed only as an aid to them in so doing. He may call the attention of the jury to particular facts; marshal and sum up the evidence relating to each issue to be determined; comment upon the tendency, force, and comparative weight of conflicting testimony bearing upon them, and point out any matter which legitimately affects the testimony of a witness or his credibility. And it is his duty to do so, under the statute, when in his opinion their consideration by the jury is necessary and will lead to

---

"These parties, in taking this contract, men of experience in that kind of work, do not leave with Mr. Loveland a copy of the paper that is headed here as an option; they take a paper there, they sign it, he goes away with it, nothing left with him to show what he has done. A man who is transacting a deal that is honest and fair gives to the other party the same paper that he has himself. You have a right to take that into consideration when you canvass the testimony of these people as to who you are

a just verdict, providing always that he makes it plain to the jury that his comment and opinion on the facts is not controlling, and that the ultimate determination is left to them. The material facts in controversy upon which there is a conflict of evidence must not be assumed by him to have been proven. It is for the jury to say whether or not the evidence is sufficient to establish such facts, and they are the sole judges of the credibility of the witnesses and the weight of the testimony. It must be apparent, on review, that the verdict rendered is that of the jury, and not the expressed opinion of the trial court.

The following extract from the charge in *Commonwealth* v. *Selfridge,* Selfridge's Trial, 160 (Massachusetts case), was quoted approvingly by Chief Justice Fuller in *Starr* v. *United States, supra:*

"As to the evidence, I have no intention to guide or interfere with its just and natural operation upon your minds. I hold it the privilege of the jury to ascertain the facts, and that of the court to declare the law, to be distinct and independent. Should I interfere, with my opinion, with the testimony in order to influence your minds to incline either way, I should certainly step out of the province of the judge into that of an advocate. All that I can see necessary and proper for me to do in this part of the

going to believe. Is this transaction such a one as was fair and aboveboard? Did these people go in it intending in the first place to take $565 and give it to Mr. Lintz for this proposition? An option is taken. Under the law a man who gets an option usually pays something, because he is taking the other man's property for a period of time. Instead of that, in this case Mr. Lintz is paid $565 to take an option, according to his own statement, and he did that, according to Mr. Loveland's statement, for the purpose of paying off a mortgage of $565 on Mr. Franklin's prop-

cause, is to call your attention to the points or facts on which the cause may turn, state the prominent testimony in the case which may tend to establish or disprove these points, give you some rules by which you are to weigh the testimony, if a contrariety should have occurred, and leave you to form a decision according to your best judgment, without giving you to understand, if it can be avoided, what my own opinion of the subject is. Where the inquiry is merely into matters of fact, or where the facts and law can be clearly discriminated, I should always wish the jury to leave the stand without being able to ascertain what the opinion of the court as to those facts may be, that their minds may be left entirely unprejudiced to weigh the testimony and settle the merits of the case.''

It is not our purpose to discourage trial judges from performing the duty imposed upon them by this law. They should fearlessly perform that duty, and at the same time make it clear to the jury that on them, and them alone, rests the burden of deciding the disputed questions of fact and the ultimate determination of the guilt or innocence of the accused, and that the comments and opinions expressed may be considered by them but as an aid in so doing.

Let us now apply what has been said to the lan-

---

erty that did not exist, and which Mr. Lintz and Mr. Whitesell knew did not exist.

''Now, I have been pretty plain in talking to you about this case. The statute provides, the new law, that I can do that. It is all up to you to pass upon this, to find whether or not the defendants in this case wilfully and intentionally carried on a transaction that was false and fraudulent, and by their conduct they deceived Mr. Loveland in parting with property which he otherwise would have gotten from Mr. Franklin less the $565. I think

guage of the charge in this case. The jury were told that the defendants were not "fair and honest" in dealing with Loveland; that they "put in a mortgage of $565 against that property which was not there, and which these real estate men knew was not there;" that they "deliberately" placed "into this contract $565 that Mr. Franklin did not know was in there, and they deliberately prepared papers whereby they would take from Mr. Loveland $565;" that "the $565 was money that was taken without any consideration, without any knowledge these men had, Mr. Franklin or Mr. Loveland;" and further, "a man who is transacting a deal that is honest and fair gives to the other party the same paper that he has himself."

It cannot be said that this language was a fair comment on the testimony or even such an expression of opinion on the weight to be given to it as may be stated in instructions. It constituted error, and the judgment must be reversed. We do not think that any intelligent juror who listened to the charge could fail to understand therefrom that the facts stated therein were, in the opinion of the trial court, fully established by the proofs and justified the conviction of the defendants, and that the jury were expected, if not instructed, to so find. We

---

I have said to you the fact he believed there was a mortgage on there would not have made any difference because if these men had been honest he would have got the property free and clear without deducting the $565.

"There have been other things that have entered into this transaction; arguments have been made to you; this man, Mr. Loveland, could have commenced a civil case. I charge you he could not do that; Mr. Franklin has not been guilty of any misrepresentation, there is no means by which Mr. Loveland could

might here appropriately say, as did the court in the *Starr Case:*

"We are not insensible to the consideration that the learned judge probably did not intend that his words should bear so sweeping a signification, but they were used more than once, and were not withdrawn or so qualified that it can be fairly held that they were not substantially prejudicial."

We feel constrained to hold that the constitutional right of the defendants to a trial by jury was invaded in the instructions given, and that the assignments of error founded thereon are well taken.

In the third paragraph the court in effect told the jury that *promises* might be relied on to sustain the charge made. The information contained no averment that any promises had been made. While fraud in certain cases may be predicated on promises made for the purpose of deceiving, and without any present intention to perform (*Kefuss* v. *Whitley*, 220 Mich. 67), the record discloses none made by defendants which justified the use of this word in the instruction. No after-allusion was made to it, and it may be said that the jury were in no way affected by it. Were this the only prejudicial error found in the instructions, we would be loath

---

have compelled Mr. Franklin to give him his property back; Mr. Franklin made no misrepresentation. He had no remedy, except as he would have had against the man who had made these statements, which there is no question they did make, and it is for you to say whether they made them intentionally, fraudulently, and falsely and by so doing compelled Mr. Loveland to put a mortgage on his place for $565, he could not put on there.

"There are some requests presented by defendant to charge, but those I have not given to you I refuse. Follow the officer."

to reverse on account of it. But, as reversal must be had, we call attention to it that the expression may not be used on a new trial.

The verdict and judgment will be set aside and a new trial granted. The defendants are remanded to the custody of the sheriff of Genesee county to await such trial.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred. POTTER, J., did not sit.