PEOPLE v. BAHLHORN.

1. CRIMINAL LAW—INSTRUCTIONS—THEORY OF CASE—EVIDENCE.
   In prosecution for breaking and entering a store in the daytime with intent to commit larceny and with grand larceny, charge of court that people's theory of the case was that a man who accompanied defendant to the store tampered with the door lock in such a way as to enable one to open the door from the outside later on and that defendant signed a receipt for a purchase while in the store, which was introduced in evidence, was supported by evidence.

2. SAME—INSTRUCTIONS—QUESTIONS OF FACT.

The instructions to a jury by a trial judge in a criminal case must be read in the light of the charge preferred against the accused and the evidence submitted on the trial but extreme care should be exercised in not stating to the jury that facts in dispute are established and it should be made clear to the jury that they had the duty of determining the questions of fact and sole responsibility of determining guilt or innocence of the accused.

3. SAME—BREAKING AND ENTERING—EVIDENCE.

Jury's verdict of conviction of breaking and entering in prosecution for breaking and entering a store in the daytime with intent to commit larceny therein *held*, supported by testimony.

4. SAME—UNRESPONSIVE ANSWERS—INSTRUCTIONS.

In prosecution for breaking and entering a store in the daytime with intent to commit larceny and with grand larceny, unresponsive answer of police officer that he determined from the way the safe had been opened that an expert had worked on the safe, which observation the prosecutor agreed should be stricken and jury instructed to disregard it, did not result in prejudicial error.

5. SAME—INSTRUCTIONS—ISSUES—REQUEST TO CHARGE—CONSPIRACY —INFORMATION.

Failure to charge jury relative to conspiracy in prosecution for breaking and entering store in the daytime with intent to commit larceny was not error where defendant's counsel denied making request to charge thereupon and stated people had charged accused alone with commission of the crime, since the question of conspiracy was not an issue in the case.

6. NEW TRIAL—RECORD.

Motion for new trial in prosecution for breaking and entering store in daytime with intent to commit larceny *held*, properly denied where no prejudicial errors are found in the record.

Appeal from Recorder's Court of Detroit; Stein (Christopher E.), J. Submitted June 12, 1941. (Docket No. 63, Calendar No. 41,575.) Decided September 2, 1941.

Bernard Bahlhorn was convicted of breaking and entering a building in the daytime with intent to commit larceny. Affirmed.

*Seward F. Nichols,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Henrietta E. Rosenthal* and *Charles W. Jones,* Assistant Prosecuting Attorneys, for the people.

BUSHNELL, J. On February 28, 1940, about 5 p.m., two men came into the store of complaining witness Mayne F. Glock, who does business in the city of Detroit under the names of Frye Equipment Company and American LaFrance Foamite Corporation. One of these men, later identified as defendant Bahlhorn, brought in a hand fire extinguisher to be recharged. Glock's clerk, Helen Kalo, made out a recharge slip on which she entered the serial and label numbers of the extinguisher and on which defendant signed the name, "B. J. Blake." While defendant was standing at the counter, his companion, identified by the witness as "the little man," walked to the front door at least three or four times and held the door slightly open. This door was equipped with a lock containing two cylinders, one on the inside and one on the outside. These cylinders were held by screws in the edge of the door which could not be removed unless the door was open.

While the defendant was being waited upon by the clerk, Glock came in and almost stumbled over the man at the door. After waiting on the defendant, Miss Kalo left the shop about 20 minutes after

5 o'clock. She locked the front door from the inside and snapped the Yale lock on the back door and pulled it shut. She returned to the shop at a quarter to seven and, when she tried to unlock the front door, the whole tumbler turned around and fell out. She immediately called Glock, the police, and a locksmith.

An examination of the premises disclosed that the large safe in which money was kept had been moved into Glock's private office. The door of this safe was open, the contents strewn all over the place, and about $1,500 was gone.

A police officer testified that, when he arrested the defendant about a week after the incident, he searched defendant's wife's car, which was parked near the place of arrest, and found a filled fire extinguisher bearing the same number as that shown on Glock's recharge receipt. He noticed that there had been a fire in the back seat of the car.

Both Glock and Miss Kalo later identified the defendant as the man who had been in the shop to have the fire extinguisher recharged. A locksmith who examined the front door on the night the safe was robbed said that:

"Some object would have to be used to take that screw out such as a screw driver. It is fastened in there tightly. You open the latch with your fingers but I don't know how they would take the screw out unless they had a screw driver. You could not take the screw out with your fingers."

On redirect examination he testified:

"It would take about a half a minute to take the screw out with a screw driver. There is about a good half inch."

Defendant was charged with breaking and entering a store in the daytime with intent to commit

larceny therein and with larceny of property of the value of $1,500.

The jury found defendant guilty of breaking and entering and he was sentenced to serve a period of 4 to 5 years in the State prison at Jackson.

On appeal, defendant charges that the court erred in commenting upon matters not in the testimony or shown in the record, and in failing to charge the jury relative to conspiracy when verbally requested to do so. It is also contended that a mistrial should have been granted when the police officer made the unresponsive answer that he "determined that the way the safe had been opened, that it was an expert man that had worked on this safe."

The prosecutor agreed that the observation should be stricken and the jury was instructed to disregard it. Defendant also contends that the court erred in denying his motion for directed verdict and in refusing a new trial; and that the verdict should be set aside as against the great weight of the evidence.

In the charge to the jury the court said in part:

"The theory of the State, members of the jury, has been explained to you by Mr. Jones. Briefly, it is that, on the day in question, namely, the 28th day of February of this year, the defendant, in company with another man, who is not here at this time, entered this store for the purpose of making a purchase, which has been explained to you; that while the defendant was engaged in making this purchase, his colleague, or the person with him, had tampered with the lock of the door leading out to the street; that while this man tampered with the lock of the door, he had unscrewed the lock in such a manner that it could be unlocked from the outside a little later on; and that when the defendant made this purchase, he signed a receipt for the purchase, which was offered in evidence and which you have

observed, and then left the premises. You have heard that testimony, and I will not go into that again at this time."

Defendant says that the record is totally barren of any testimony or evidence which would tend to substantiate such a theory and that the conviction must be set aside. There is testimony in the record to support the theory of the people's case. The court said in *People* v. *Lintz,* 244 Mich. 603, 616, 617, 619:

"What a trial judge may or may not say to a jury in a particular case cannot be stated in an opinion. His instructions must be read in the light of the charge preferred against the accused and the evidence submitted on the trial. In the first place, extreme care should be exercised in not stating to the jury that facts in dispute are established. * * *

"It is not our purpose to discourage trial judges from performing the duty imposed upon them by this law. (3 Comp. Laws 1929, § 17322 [Stat. Ann. § 28.1052]). They should fearlessly perform that duty, and at the same time make it clear to the jury that on them, and them alone, rests the burden of deciding the disputed questions of fact and the ultimate determination of the guilt or innocence of the accused, and that the comments and opinions expressed may be considered by them but as an aid in so doing."

The trial judge made it clear to the jury that they had the duty of determining the questions of fact and that they had the sole responsibility of the ultimate determination of the guilt or innocence of the accused. The verdict of the jury is supported by the testimony.

No prejudicial error resulted from the unresponsive answer of the police officer, in view of the trial judge's instructions to the jury to disregard this comment. *People* v. *Kiely,* 230 Mich. 403.

The court did not err in failing to charge the jury relative to conspiracy. Defendant's counsel, while the court was charging the jury, denied that he made such a request and stated that the people charged the accused alone with the commission of the crime. The question of conspiracy was not an issue in the case. There was no reason for the court to grant defendant's motion for directed verdict in the face of the people's testimony and, no prejudicial errors being found in the record, the court was likewise correct in denying defendant's motion for a new trial.

The judgment of the trial court is affirmed. No costs.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred.