PEOPLE *v.* PADGETT.

1. CRIMINAL LAW—COMMENT OF JUDGE—JURY TRIAL.
    While, under the code of criminal procedure, the trial judge, in instructing the jury, may comment on the evidence, in making such comment care should be exercised, and it should be borne in mind that the constitutional right of trial by jury·is·secured to every person accused of crime and that one of its substantial elements is the right of the ·jury to give a general verdict on the merits (Const. 1908, art. 2, § 13; 3 Comp. Laws 1929, § 17322).

2. SAME—INSTRUCTIONS—COMMENT    ON    EVIDENCE—NATURE    OF CHARGE—EVIDENCE.
    In reviewing the instructions of a trial judge in a criminal case in which he comments on the evidence, what he may or may not say depends upon the charge preferred against the accused and the evidence submitted on the trial (3 Comp. Laws 1929, § 17322).

3. SAME—JUDGE MAY NOT TREAT DISPUTED FACTS AS PROVEN.
    While the trial judge may, in making comment on the evidence in a criminal case, review the testimony, the language employed must be such as will not leave in the minds of the jury a fixed opinion that a disputed fact has been proven and that they must so consider it in arriving at their verdict (3 Comp. Laws 1929, § 17322).

4. SAME—COMMENT ON EVIDENCE—OPINION AS TO VERDICT.
    In expressing an opinion as to the evidence in a criminal case, which must relate only to matters in the record or occurring at the trial bearing upon the issue to be decided, the trial judge should not state what he thinks the verdict should be or how he thinks the jury should decide the case (3 Comp. Laws 1929, § 17322).

5. SAME—SUFFICIENCY OF EVIDENCE TO ESTABLISH MATERIAL FACTS
—CREDIBILITY OF WITNESSES.

In a criminal case, it is for the jury to say whether or not the
evidence is sufficient to establish the material facts in con-
troversy upon which there is conflicting evidence and they are
the sole judges of the credibility of the witnesses and the
weight of the testimony.

6. SAME—COMMENT ON EVIDENCE—STATUTES—FUNCTIONS OF JUDGE
AND JURY.

The statute giving a trial judge the right to comment on testi-
mony and character of witnesses is not to be construed so as to
deprive defendant of his constitutional trial by jury, to enable
the judge to deprive defendant of a fair trial, or to permit the
judge to usurp functions of the jury, or to direct a verdict
upon disputed questions of fact (3 Comp. Laws 1929, § 17322).

7. STATUTES—CONSTRUCTION—CONSTITUTIONAL LAW.

A statute should be held constitutional unless by plain import
or necessary intendment it violates an express constitutional
inhibition.

8. CRIMINAL LAW—COMMENT ON EVIDENCE—CONSTRUCTION OF STAT-
UTE.

Statute authorizing a trial judge to comment on the evidence
in a criminal case when construed as not depriving one charged
with crime of the presumption of innocence, nor throwing upon
him the burden of proof nor permitting the trial judge to in-
vade or usurp the province of the jury in their determinations
as to credibility of witnesses and questions of fact, is not un-
constitutional (3 Comp. Laws 1929, § 17322).

9. HOMICIDE—OTHER OFFENSES—IDENTITY—EVIDENCE.

In prosecution for murder committed in the course of a robbery
at a clothing store it was highly prejudicial and reversible
error to permit a witness to testify that defendant was one of
the men who had robbed him at his filling station some 15 days
earlier where there was no connection between the crime
charged and the filling station robbery, the witness did not
attempt to identify defendant as one who had committed the
murder and the matter of identity was the only issue of fact
for the jury.

Appeal from Washtenaw; Sample (George W.),
J. Submitted June 17, 1943. (Docket No. 69, Cal-
endar No. 41,657.) Decided October 11, 1943.

William H. Padgett was convicted of murder. Reversed and new trial granted.

*Isaac M. Smullin* and *Walter M. Nelson,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Francis W. Kamman,* Prosecuting Attorney (*Albert J. Rapp,* of counsel), for the people.

BOYLES, C. J. Defendant appeals from a conviction by jury of the crime of murder of the first degree perpetrated in the commission of a felony, and from a sentence of life imprisonment. We find two errors relied upon for reversal that require consideration.

On March 21, 1935, a police officer of the city of Ann Arbor was shot and killed during the perpetration of a felony (robbery) in a retail store in that city. The two owners of the store, Mr. Wetherbee and Mr. Conlin, and a single customer, a Mr. Akers, were in the store about 3 o'clock in the afternoon, when two men entered, and one of them asked to look at some topcoats. As one of them was trying on a topcoat, he produced a gun and said it was a holdup. The other immediately joined the two, produced another gun. The two owners and the customer were ordered to go to the back of the store, and as one of the two holdup men went toward the cash register an officer of the Ann Arbor police department entered the store. One of the owners called to him to "look out," "it's a stick-up." One of the two holdup men, later identified as the defendant herein, walked up to the back of the officer, stuck a gun against his back, and ordered him to "stick them up." The other bandit joined in, and in the ensuing scuffle the officer was shot and killed.

At the trial, the defendant attempted to prove an alibi. The only issue of fact for the jury was the question of identity. One of the owners, shortly after the crime, identified a photograph of the defendant Padgett as being one of the perpetrators of the crime. Padgett was apprehended in California a year later, extradited, tried by jury and convicted. Two eyewitnesses testified to his identity as one of the two men who committed the crime. The testimony of the third eyewitness was waived by the defendant. On behalf of the defendant, testimony was received that he was elsewhere on the day of the crime—a perfect alibi if believed by the jury. The defendant was sworn and in his own behalf testified as to where he claimed to have been, in another State, on the day of the crime. While there were some discrepancies in the testimony of the two eyewitnesses, on behalf of the people, their testimony tended strongly to prove the identity, and the guilt, of the defendant.

Near the outset of the trial court's charge to the jury, he instructed them as follows:

"It is the charge of the people in this case, represented by the prosecuting attorney, that this murder was committed, the killing of Clifford A. Stang, in an attempt to rob the Wetherbee clothing store. And that is all there is this jury has to find out in this case: Was the defendant the right party? Was he one of those two parties who came in to rob? You don't have anything else to bother you at all. * * * By elimination, these were the only two men in the store with guns, and Clifford Stang was shot. It would be a silly thing to come to any other conclusion than that he was shot by one of these two men who had guns."

We are inclined to agree that the only issue of fact of any moment to be considered by the jury was

the question of the identity of the defendant Padgett. It then becomes of importance to consider what the trial court said to the jury in that regard. The court correctly instructed the jury as to the meaning and effect of an alibi. Unfortunately, in a charge otherwise marked for its fairness, the trial judge expressed his opinion as to the credibility of the witnesses and the guilt of the defendant in no uncertain terms. After a correct charge as to the law, the court, relying on the statute (referred to later herein), said to the jury:

"This is an important case. Important to the people and important to the defendant. And because there are so many people, the responsibility must not be divided in behalf of the people. It is just as important to every single individual in this State as it is to the defendant. If this defendant is guilty of this crime, he has classed himself as a felon and a felon of the worst type. I wouldn't call him names, except to say, that he is a felon of the worst type. He isn't entitled to one iota of sympathy from this jury and it ought not be in your minds a minute, if he is found guilty of this offense, because he has deliberately chosen with his eyes open and his ears open, and he knows how to read and write, he has chosen to classify himself as a felon and I hope that the jury, if they find him guilty beyond a reasonable doubt that they will not consider one minute any sympathy in his behalf. I am sorry, on the other hand, I always feel sorry that anyone violates the law, but apart from that when it comes to my part in the administration of the law, I don't allow sympathy to enter into it, and I think this jury without a single exception is of that type. Sympathy for a man who wrongly classifies himself in society, why, it is misguided sympathy. There isn't any place for it. There really isn't any place for it, I was going to say, as individuals, but I rather con-

tradicted myself in that, so I think I will not enforce that statement.    *    *    *

"Under the testimony in this case and under the statutes, although I haven't the power to say to the jury that they· cannot bring in such a verdict, but the legislators have thought wise to give the court the right to comment on the testimony in the case. The jury is not bound by what they think the court thinks about the testimony. You can still disregard everything that the court says about it and decide your own way. But, in this case, the testimony of Mr. Akers and Mr. Wetherbee convinced the court that they were telling the truth and the conceivable truth. Neither one described, as far as the court could determine, anything that appeared to be aroused by prejudice or doubt or anything that they could have done, except what was right in the case. Disinterested, practically, participants interested like every other citizen ought to be in the fact that the law ought to be enforced to the letter, but never taking ·away, by their testimony, anything that appeared to be prejudicial in their testimony, a single right of the defendant.

"Something has been said—counsel for the defendant has done his best and done fine, presented everything that the defendant had to present, and might have cast, by his vigorous defense, might have cast some little discrepancy in some juror's mind as to whether or not this man can be recognized. How is it that we can tell John Doe in the morning and after I pass him, I can't describe his features? But I know him. I couldn't sit here and describe the features of my own son. You can't describe the features of very many people if you turn your back on them and your back on their faces. Very few you can describe. Features of people, looking them face to face, but not that God-given right that you have of recognizing your friends, your neighbors and your family. In some intrinsic way you do know one man from another, and I feel that when

Mr. Wetherbee testified as positively as he does, and defendant was in that store that morning, that they had an occasion to have an impression of his features—although they may not have been able to describe them vividly—that would last them all their lives, and yet they might not be able to say unless they were face to face with the man, 'that was the man.' So that is the difficulty. My judgment is there is nothing to the question of a description of this man's features. It is a question of whether Mr. Akers knew him by his drawl, or his walk, or his conversation, or his face, and it is a question as to whether Mr. Wetherbee was describing him. Neither of these men, in my judgment, as they testified here, and that's the only way I am commenting on their testimony, is what they say here, not how I have known them personally. But neither of these men would want to just pick anybody out of a crowd and say, 'You must do time' if they had any doubt. If they had any doubt of whether this man was the guilty man they would have said so. Well, the only other person's testimony that I figure is important in this case is the defendant himself. Take the testimony that I have already commented upon and take his testimony, the testimony as he gave it on the stand. One of his answers which he drew back and would not repeat, that he had been in jails all his life. You know, there isn't much, I will not say that. I was going to say that a man is to be pitied that would even admit that, if it were true, but I won't say that because what he did say was vindictive of a loss of pride. Ladies and gentlemen, I don't believe a word the defendant testified to, unless he just happened to tell the truth or something. That is my comment on his testimony. You can do as you believe. You don't have to believe like I do, but the court says I shall comment on the testimony. I have performed my duty to you and to the defendant. He isn't going to be found guilty unless he knows how this court feels, and if you find him not

guilty, he will still know how the court feels by the comment that the court has made. It is up to you now. I am through. Perform your duty to the people of the State of Michigan and to this defendant, and I hope it will be performed in such a way that it will inspire us that you are right, even though the court may be wrong. And that it will lead those people—if this man is found guilty he will be disposed of in such a manner that it will lead those people of the State of Michigan who have become cognizant of the findings in this case, to lead a little different sort of lives than they have in the past; people who are disposed to commit criminal offenses.

"The Utopia will never be here, that is always just beyond. I hope the day will come some time when the criminal element will be discovered in our body politic before they commit crimes, and then taken care of before the people are subjected to their felonious acts and incidents thereto."

The statute (3 Comp. Laws 1929, § 17322 [Stat. Ann. § 28.1052]) undoubtedly led the trial judge to believe that he could impress on the jury his personal opinion as to the guilt of the defendant, and the credibility of the witnesses. The applicable part of the statute reads:

"The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require."

Before the enactment of this statute, the province of the trial judge in commenting on the issues of fact in a criminal case was clearly stated as follows:

"Under the system of jurisprudence which has so far obtained in this State, whether rightfully or wrongfully, the trial judge is precluded from inti-

mating to the jury his views as to how they should decide the issues of fact within their province; and it would be an exceedingly dull jury that failed to grasp the drift of the charge in the particulars pointed out." *People* v. *Durham,* 170 Mich. 598, 606.

In *People* v. *Lintz,* 244 Mich. 603, 609, 611, 616, 618, the first case considered by this court in construing this statute after it was enacted, this was said:

"Defendants' counsel contend that the instructions given were in effect a direction to the jury to convict their clients. The prosecution insists that such instructions were warranted by the provision in our new criminal code (Act No. 175, chap. 8, § 29, Pub. Acts 1927 [3 Comp. Laws 1929, § 17322 (Stat. Ann. § 28.1052)]).   *   *   *

"This statute provides that the court shall 'make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require.' In making such comment, care must be exercised. It must always be borne in mind that under our Constitution (1908, art. 2, § 13) 'the right of trial by jury' is secured to every person accused of crime, and 'one of its substantial elements is the right of the jury to give a general verdict on the merits.' *Underwood* v. *People,* 32 Mich. 1 (20 Am. Rep. 633).   *   *   *

"What a trial judge may or may not say to a jury in a particular case cannot be stated in an opinion. His instructions must be read in the light of the charge preferred against the accused and the evidence submitted on the trial. In the first place, extreme care should be exercised in not stating to the jury that facts in dispute are established. While he may, in making such comment, review the testimony, the language employed must be such as will not leave in the minds of the jury a fixed opinion that a disputed fact has been proven and that they

must so consider it in arriving at their verdict. Any opinion he expresses must relate to matters in the record or occurring at the trial bearing upon the issue to be decided; he should not express an opinion as to what he thinks the verdict should be or how he thinks the jury should decide the case. * * *

"The material facts in controversy upon which there is a conflict of evidence must not be assumed by him to have been proven. It is for the jury to say whether or not the evidence is sufficient to establish such facts, and they are the sole judges of the credibility of the witnesses and the weight of the testimony. It must be apparent, on review, that the verdict rendered is that of the jury, and not the expressed opinion of the trial court."

And in discussing the lower court's comment on the testimony, it was further said, p. 620:

"It cannot be said that this language was a fair comment on the testimony or even such an expression of opinion on the weight to be given to it as may be stated in instructions. It constituted error, and the judgment must be reversed. We do not think that any intelligent juror who listened to the charge could fail to understand therefrom that the facts stated therein were, in the opinion of the trial court, fully established by the proofs and justified the conviction of the defendants, and that the jury were expected, if not instructed, to so find."

Again considering this same provision in the code of criminal procedure, this court, in *People* v. *Lewis,* 264 Mich. 83, 87, said:

"The right of the trial court to comment upon the testimony and character of witnesses is given by statute. 3 Comp. Laws 1929, § 17322. The statute is not to be construed to deprive defendant of a trial by jury, to which he is constitutionally entitled; to enable the trial court to deprive defendant of a fair

trial; to permit the trial court to usurp the functions of the jury or to direct a verdict upon disputed questions of fact. *People* v. *Lyons,* 49 Mich. 78; *People* v. *Hare,* 57 Mich. 505; *Hicks* v. *United States,* 2 Okla. Crim. 626 (103 Pac. 873); *Roberson* v. *State,* 40 Fla. 509 (24 South. 474); *People* v. *Faczewski,* 242 Mich. 523; *People* v. *Kasem,* 230 Mich. 278; *People* v. *Lintz,* 244 Mich. 603.''

See, to the same effect, *People* v. *Bigge,* 297 Mich. 58.

Under a familiar rule of statutory construction, we should seek to uphold the constitutionality of this provision of statute law unless by plain import or necessary intendment it violates an express constitutional inhibition. The statute, within proper limits, has a proper place in the criminal procedure of our courts. It must not be given the effect of depriving one charged with crime of the presumption of innocence, nor throw upon him the burden of proof. It is the sole province of the jury to determine the credibility of witnesses, and to pass upon questions of fact. If even one juror is swayed by the weight of the openly expressed opinion of the court, and his verdict thus affected, the right of trial by jury in criminal cases is impaired. The court, unless jury trial is waived in a criminal case, should not invade or usurp the province of the jury.

One Walter Swiss was permitted to testify, over objection, that he was held up and robbed by the defendant, at his filling station in Dearborn, 15 days before the date of the crime for which the defendant was on trial. This witness did not attempt to identify the defendant as the man who shot the police officer in Ann Arbor on March 21st. He had no personal knowledge as to who committed that crime. He merely identified the defendant as one of the men who robbed him at his filling station 15 days

earlier. There was no connection whatever between the robbery to which this witness testified and the offense for which the defendant was on trial. This testimony does not come within any of the recognized exceptions to the general rule that the commission of other, though similar, offenses cannot be shown. See 1 Gillespie, Criminal Law & Procedure, p. 410, § 346, and cases cited. , This testimony was not admissible, was highly prejudicial, and the receiving of it was reversible error.

Conviction and sentence set aside, new trial granted, and the defendant remanded to the custody of the sheriff of Washtenaw county.

CHANDLER, NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.